150 P.3d 86 (2007)
In the Matter of the DETENTION of Roy Donald STOUT, Jr.
State of Washington, Respondent,
v.
Roy Donald Stout, Jr., Petitioner.
No. 77369-6.
Supreme Court of Washington, En Banc.
Argued June 8, 2006.
Decided January 4, 2007.
*88 Elaine L. Winters, Washington Appellate Project, Seattle, WA, for Petitioner.
Malcolm Ross, Attorney General of Washington, Krista Kay Bush, McKay Chadwell PLLC, Seattle, WA, Jay Douglas Geck, Office of the Attorney General, Olympia, WA, for Respondent.
*89 BRIDGE, J.
¶ 1 Following a bench trial, Roy Donald Stout, Jr. was committed as a sexually violent predator. He argues that the trial court's commitment decision should be reversed and that this court should remand for a new commitment trial because: (1) he should have been given the opportunity to relitigate the facts comprising the burglary conviction upon which his commitment was based; (2) his constitutional right to confront an adverse witness was violated when the State offered and the trial court admitted the deposition testimony of his burglary victim in lieu of live testimony; (3) he received ineffective assistance of counsel; and (4) the trial court did not reach a specific conclusion of law that Stout has serious difficulty controlling his behavior. We reject Stout's contentions and affirm the Court of Appeals.

I

Facts and Procedural History
¶ 2 On July 6, 1997, Stout visited T.D., a casual acquaintance, at her home. As they sat in the living room and talked, Stout spoke sharply to T.D.'s children, directing them to leave the room. Stout placed his hand on T.D.'s breast, tried to move his hand up her thigh, and attempted to kiss her. He held her by placing his hand on her throat and pushing her back on the couch, leaving a bruise mark on her neck. T.D. struggled and told Stout, "No." Clerk's Papers (CP) at 345. She fled his advances and Stout left. On December 4, 1997, Stout pleaded guilty to burglary in the first degree in connection with the T.D. incident, and was sentenced to 75 months in prison. In his plea, Stout admitted that he "remained unlawfully in a building and assaulted a person herein." CP at 330; Report of Proceedings (RP) at 62-63.
¶ 3 While Stout was serving his sentence for the burglary, the State filed a petition alleging he was a sexually violent predator (SVP) and should therefore be involuntarily committed to the special commitment center pursuant to chapter 71.09 RCW. The State alleged that the burglary was sexually motivated, constituting a sexually violent offense as defined by statute. At trial the State offered Stout's guilty plea, in which he admitted to assaulting T.D. The State also offered T.D.'s testimony about the incident by way of two deposition transcripts, and a video recording of one of the depositions. A telephonic deposition was necessary because T.D. refused to return from her home in Michigan to Washington for the commitment trial.
¶ 4 The State also presented evidence of other charges and convictions against Stout for sexually motivated crimes. In 1982, Stout was charged with attempted rape in the second and third degree of K.W., a stranger to Stout. While a jury found him not guilty, injuries sustained by K.W. during the encounter suggested it was of a violent nature. In 1991, Stout entered into an Alford[1] plea for a third degree assault charge arising from his nonconsensual sex with a developmentally disabled woman, J.G. In 1992, a jury found Stout guilty of indecent liberties by forcible compulsion in connection with an incident involving K.O. In 1996, Stout was charged with telephone harassment after he called J.B., a stranger, and asked her to have sex with him for money. The charge was later dropped. The court also heard testimony from R.S., who had an encounter with Stout that was very similar to his encounter with K.O.[2] The trial court found that Stout has "a lengthy history of approaching total strangers or casual acquaintances for *90 sex . . . [and] becoming violent when rebuffed." CP at 340.
¶ 5 In addition to Stout's criminal history, at trial the State also offered expert testimony from Dr. Richard Packard, who opined that Stout suffers from antisocial personality disorder and from the mental disorder "paraphilia not otherwise specified (NOS), non-consent." CP at 347. This means that Stout suffers from a mental disorder that "causes recurrent intense sexually arousing fantasies, urges and behaviors involving non-consenting adults. . . ." CP at 347. In making his evaluation, Dr. Packard reviewed Stout's criminal history, including his nonsexual criminal offenses, Department of Corrections records, previous evaluations, police reports, victim statements, presentence investigations, trial testimony transcripts, special offender center records, deposition transcripts, and interviews with and tests on Stout. Stout offered his own testimony contradicting the versions of events offered by the various women called to testify and also offered expert testimony from Dr. Betty Fletcher contradicting Dr. Packard's evaluation. The trial court found Stout far less credible than the victims and Dr. Packard more helpful than Dr. Fletcher.
¶ 6 In October 2003, the trial court determined that Stout is a sexually violent predator as defined in chapter 71.09 RCW and ordered him to be involuntarily committed. The court concluded the burglary for which Stout was incarcerated was a sexually violent offense. It also concluded that his 1992 conviction for indecent liberties by forcible compulsion was a sexually violent offense as defined by statute. It found that Stout suffers from a mental abnormality, paraphilia nonconsent, and antisocial personality disorder. The court also found that Stout's combination of paraphilia and antisocial personality disorder "causes him serious difficulty in controlling his behavior of engaging in sex with non-consenting others." CP at 332.
¶ 7 Stout appealed his commitment, arguing in part that the State did not prove he committed a burglary, he had ineffective counsel, and that the trial court failed to make a necessary conclusion of law. The Court of Appeals affirmed the trial court's decision, In re Detention of Stout, 128 Wash. App. 21, 114 P.3d 658 (2005), rejecting Stout's argument that the State was required to reprove the burglary at the commitment trial and also his claim that his counsel was ineffective. The Court of Appeals held that because Stout had pleaded guilty to the burglary charge, the State was required to prove only that the burglary was sexually motivated and that the superior court's findings in that regard were supported by sufficient evidence. Stout petitioned for review of the Court of Appeals decision as to the State's burden of proof, ineffective assistance of counsel, and the trial court's conclusions of law. He additionally claimed for the first time before this court a right to confrontation at a commitment hearing. This court granted review at 156 Wash.2d 1030, 133 P.3d 474 (2006).

II

Analysis
¶ 8 In order to commit an individual as an SVP under chapter 71.09 RCW, the State must show beyond a reasonable doubt that the individual is a sexually violent predator. In re Pers. Restraint of Young, 122 Wash.2d 1, 13, 857 P.2d 989 (1993). An SVP is an individual who as been "convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(16) (emphasis added). Burglary is a sexually violent offense if the State shows beyond a reasonable doubt that the crime was sexually motivated. RCW 71.09.020(15)(c).

A. Burglary Plea
¶ 9 Following the incident at T.D.'s home, Stout pleaded guilty to first degree burglary, admitting, "I remained unlawfully in a building and assaulted a person herein." CP at 330; RP at 62-63. Stout first argues that the State failed to prove the underlying conviction on which it predicated its SVP petition in Stout's case. He contends that his plea of guilty to the burglary is not *91 conclusive proof he committed burglary. Pet. for Review at 7-8. Consequently, Stout argues that the Court of Appeals improperly applied collateral estoppel against him, impermissibly frustrating his efforts to disprove he committed burglary. Id. at 8.[3] We disagree.
¶ 10 Stout principally relies upon Clark v. Baines, 150 Wash.2d 905, 84 P.3d 245 (2004), in which we held that "a defendant who pleads guilty pursuant to an Alford plea has not had a full and fair opportunity to litigate the issues in the criminal action." Id. at 917, 84 P.3d 245. The Clark court explained that while an Alford plea is an admission, for the purposes of a subsequent civil action an Alford plea may not be conclusive of guilt. Id. at 915, 84 P.3d 245 (citing Teitelbaum Furs, Inc. v. Dominion Ins. Co., 58 Cal.2d 601, 605-06, 375 P.2d 439, 25 Cal.Rptr. 559 (1962)). Hence, the plea could not be used as a basis for collateral estoppel in a subsequent civil action.[4]
¶ 11 Stout claims the Court of Appeals erred below when it "rejected Mr. Stout's argument [that] he was not collaterally estopped from re-litigating the facts of the burglary," Petition for Review at 8, because the decision created a conflict with Clark.[5] But the Clark court did not answer the question of whether a traditional guilty plea also precludes use of the plea as a basis for collateral estoppel. The Clark court reasoned that the "determination of whether application of collateral estoppel will work an injustice . . . depends primarily on `"whether the parties to the earlier proceeding received a full and fair hearing on the issue in question."'" Clark, 150 Wash.2d at 913, 84 P.3d 245 (quoting Thompson v. Dep't of Licensing, 138 Wash.2d 783, 795-96, 982 P.2d 601 (1999) (quoting In re Marriage of Murphy, 90 Wash.App. 488, 498, 952 P.2d 624 (1998))). However, Clark's holding is specifically linked to Alford pleas, and its reasoning is conscious of the "uniquely problematic" context created by an Alford plea. Id. at 916, 84 P.3d 245. Not only does an Alford plea take the place of a guilty verdict following a trial, but the defendant "has not admitted committing the crime." Id. (emphasis added). In Clark, the defendant expressly maintained his innocence when entering into the plea agreement and explicitly did not agree with the disposition of the facts. Here, at the time of sentencing Stout entered into a traditional guilty plea, wherein he specifically admitted to particular acts constituting the crime of burglary. Thus, the case at bar is easily distinguishable from Clark.
¶ 12 Moreover, the State correctly asserts that the doctrine of collateral estoppel is not necessarily germane to a commitment proceeding. We have held that in an SVP commitment proceeding, an individual cannot attack a conviction that is constitutionally valid on its face. Young, 122 Wash.2d at 54-55, 857 P.2d 989. In Young, the State based its commitment petition for Young on his several prior rape convictions. Id. at 54, 857 P.2d 989. Young argued the convictions should have been excluded because they arose out of erroneous jury instructions. Id. We rejected his argument, reasoning that unless a conviction is invalid on its face, requiring "appellate review of all prior convictions . . . would `unduly and unjustifiably overburden the [trial] court.'" Id. at 55, 857 P.2d 989 (alteration in original) (quoting State v. Ammons, 105 Wash.2d 175, 188, 713 P.2d 719, 718 P.2d 796 (1986)). Stout does not argue his conviction is unconstitutional on its face, but rather that he did not commit the burglary. Pet. for Review at 7. As the State notes, and as the Court of Appeals held, the State need only prove that Stout was convicted of a crime designated in *92 the SVP statute.[6] RCW 71.09.020(16), .030. Stout does not contest the fact of his conviction; he contests the underlying facts comprising the conviction. That question is of no consequence to what the State must show, i.e. the fact of a conviction.[7] We reject Stout's collateral estoppel argument.[8]

B. Right To Confront
¶ 13 At Stout's SVP commitment trial, the State presented testimony from T.D, the victim of Stout's burglary, in the form of two telephonic depositions. A camera filmed T.D. as she answered questions. Because of a technical malfunction, the initial deposition was not recorded on VHS, but audio was available and a transcript was made. Stout requested a second deposition, which was successfully videotaped. The commitment court judge reviewed the deposition transcripts and the working video. Stout was not present at either telephonic deposition, nor did he make a request to be present. Suppl. Br. of Resp't at 20.
¶ 14 For the first time in this court, Stout claims that his "due process right to confront and cross-examine the witness against him was thus violated, and this Court should reverse the commitment order." Pet'r's Suppl. Br. at 5. At the outset, we note that Stout had two separate opportunities to cross-examine T.D. No controversy exists before this court as to cross-examination. Accordingly, we review only Stout's confrontation claim.[9] Moreover, we take this opportunity to reiterate that although SVP commitment proceedings include many of the same protections as a criminal trial, SVP commitment proceedings are not criminal proceedings. Seling v. Young, 531 U.S. 250, 260, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001); Young, 122 Wash.2d at 23, 857 P.2d 989. It is well-settled that the Sixth Amendment right to confrontation is available only to criminal defendants. State v. Abd-Rahmaan, 154 Wash.2d 280, 288, 111 P.3d 1157 (2005); Chmela v. Dep't of Motor Vehicles, 88 *93 Wash.2d 385, 392, 561 P.2d 1085 (1977). As such, the Sixth Amendment right to confrontation is not available to an individual challenging an SVP commitment. Therefore, we entertain Stout's confrontation claim only as it relates to his claimed rights to due process and equal protection.
¶ 15 1. Due Process Right To Confront Witness: Stout contends that the use of T.D.'s deposition as opposed to live testimony at his commitment trial violated his due process right to confrontation. Alternatively, he contends that a due process right to confrontation required his presence at T.D.'s deposition.[10] It is well-settled that civil commitment is a significant deprivation of liberty. Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Therefore, individuals facing commitment, especially those facing SVP commitment, are entitled to due process of law before they can be committed. See In re Det. of Halgren, 156 Wash.2d 795, 807-38, 132 P.3d 714 (2006).
¶ 16 However, due process is a flexible concept. At its core is a right to be meaningfully heard, but its minimum requirements depend on what is fair in a particular context. Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Demore v. Kim, 538 U.S. 510, 551, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (Souter, J., concurring) ("Due process calls for an individual determination before someone is locked away."). In determining what procedural due process requires in a given context, we employ the Mathews test, which balances: (1) the private interest affected, (2) the risk of erroneous deprivation of that interest through existing procedures and the probable value, if any, of additional procedural safeguards, and (3) the governmental interest, including costs and administrative burdens of additional procedures. Mathews, 424 U.S. at 335, 96 S.Ct. 893; Young, 122 Wash.2d at 43-44, 857 P.2d 989.
¶ 17 The first Mathews factor weighs heavily in Stout's favor. There is no dispute that Stout has a significant interest in his physical liberty. However, the remaining factors weigh in favor of the State. As to the second Mathews factor, existing protections indicate that there is a minimal risk of erroneously depriving Stout of his liberty. A comprehensive set of rights for the SVP detainee already exists. For example: before commitment proceedings may even be initiated against a suspected SVP, the State must show probable cause to proceed with a commitment trial. RCW 71.09.040(1). At the probable cause hearing, the suspected SVP has the right to counsel, to present evidence on his or her own behalf, to cross-examine adverse witnesses, and to view and copy all petitions and reports in the court file. RCW 71.09.040(3). At all stages of an SVP proceeding, the detainee has the right to counsel, including appointed counsel. RCW 71.09.050(1). An SVP detainee may request a jury of 12 peers. RCW 71.09.050(3). Most importantly, at trial the State carries the burden of proof beyond a reasonable doubt, and in a jury trial, the verdict as to whether a detainee is a sexually violent predator must be unanimous. RCW 71.09.060(1); Young, 122 Wash.2d at 48, 857 P.2d 989. Given these significant protections, it is unlikely an SVP detainee will be erroneously committed if he is not also able to confront a live witness at commitment or be present at a deposition.
¶ 18 Indeed, there would be little value in adding a confrontation right to the procedural safeguards available to an SVP detainee. Stout claims that confrontation ensures the veracity of witness testimony, allows a detainee to alert his or her attorney to inconsistencies in the testimony of an adverse witness, *94 and allows the fact finder to judge the witness's demeanor. Pet'r's Suppl. Br. at 9, 15. The concurrence cites such concerns as well. Concurrence at 99-100. However, each of these goals was accomplished without confrontation at either the commitment trial or the deposition. T.D. was deposed under oath, so her veracity is as guaranteed as if she had testified at trial. CP at 85, 114. Regardless of whether Stout was actually present at the deposition, he could have reviewed T.D.'s deposition with his attorney, allowing him to point out inconsistencies that could have been used to impeach her in any subsequent deposition. Finally, because the second deposition was successfully videotaped, the fact finder had an opportunity to observe T.D.'s demeanor during questioning.
¶ 19 The third Mathews factor also balances in favor of the State. Stout acknowledges that the State has an interest in protecting the community from sex offenders who pose a risk of reoffending. Suppl. Br. at 10. Stout also acknowledges that the State has an interest in streamlining commitment procedures and avoiding the heavy financial burden that would be attendant with requiring live testimony of out-of-state witnesses like T.D.[11]See id. The State also has an interest in ensuring the availability of testimony that may come from witnesses who are no longer in the area or easily accessible. If an SVP commitment takes place several years after the predicate convictions and if a determination of sexual motivation was not made at the time of sentencing, it is unduly burdensome to require the State to build its case around a right to confrontation that adds only marginal protection for an SVP against liberty deprivation. Cf. McRae v. State, 88 Wash.2d 307, 313, 559 P.2d 563 (1977) (discussing the difficulties of proof attendant with lengthy delays between proceedings).
¶ 20 Stout does cite to a handful of authority that expressly support a due process confrontation right outside a criminal trial context.[12]See, e.g., Greene v. McElroy, 360 U.S. *95 474, 496-97, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (individual should have had opportunity to confront and cross-examine adverse witnesses before his security clearance was revoked by Department of Defense); Goldberg v. Kelly, 397 U.S. 254, 270, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (welfare termination hearing should include right to confront); Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (in parole revocation context, minimal due process includes right to confront); Morrissey v. Brewer, 408 U.S. 471, 488-89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (same); State v. Dahl, 139 Wash.2d 678, 686, 990 P.2d 396 (1999) (limited right to confrontation in parole revocation hearing); Abd-Rahmaan, 154 Wash.2d at 288, 111 P.3d 1157 (limited right to confrontation in sentencing modification proceeding); Vitek v. Jones, 445 U.S. 480, 494-95, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (prisoner due confrontation right in hearing to determine if he was mentally ill where determination would result in his transfer from prison to secure mental facility).
¶ 21 These cases are distinguishable from that of Stout. None engages in a Mathews balancing test, which is the appropriate test to use in determining what process is due in a given context, particularly where civil commitments are concerned.[13]Young, 122 Wash.2d at 44, 857 P.2d 989 (citing In re LaBelle, 107 Wash.2d 196, 221, 728 P.2d 138 (1986)). More importantly, in none of the cases cited by Stout did minimum due process require that the government bear the burden of proof beyond a reasonable doubt. By that fact alone, Stout received significantly more process than any of the individuals in the cases cited by him. Not only does the absence of the Mathews test render the preceding cases legally distinct from Stout's case, they are also factually dissimilar.[14] Accordingly, we hold that an SVP detainee does not have a due process right to confront a live witness at a commitment trial, nor does *96 he have a due process right to be present at a deposition.
¶ 22 2. Equal Protection Right: In addition to his due process argument, Stout argues that denying an individual confrontation rights in an SVP proceeding violates Washington's equal protection guaranty under article I, section 12 of the Washington Constitution. We examine the due process protections of the sexual predator statute in light of those provided under the general involuntary commitment statutes. "A person cannot be deprived of procedural protections afforded other individuals merely because the State makes the decision to seek commitment under one statute rather than another statute." Young, 122 Wash.2d at 45, 857 P.2d 989. We apply the rational basis test to statutes creating different classes of persons for the purposes of involuntary commitment statutes. In re Det. of Turay, 139 Wash.2d 379, 410, 986 P.2d 790 (1999). Rational basis is highly deferential, and a legislative enactment reviewed under rational basis will be upheld unless the individual challenging the classification can show that "`it rests on grounds wholly irrelevant to the achievement of legitimate state objectives.'" Id. (quoting State v. Thorne, 129 Wash.2d 736, 771, 921 P.2d 514 (1996)).
¶ 23 Stout claims two different provisions under the general involuntary civil commitment statutes afford a confrontation right to would-be patients: RCW 71.05.310 and RCW 71.05.360(5), (8). Pet'r's Suppl. Br. at 12. Stout is incorrect. Neither RCW 71.05.310 nor RCW 71.05.360(5) and (8) make express reference to confrontation rights. RCW 71.05.310 states that those facing civil commitment shall be afforded proceedings that "in all respects accord with the constitutional guarantees of due process of law." RCW 71.05.310. Because due process is flexible, a confrontation right cannot be extrapolated from a general guaranty of due process without a more express statement about what minimum guaranties due process would encompass. Likewise, RCW 71.05.360(5), (8) expressly grant the right to cross-examine adverse witnesses, but there is no mention of confrontation. Since Stout had ample opportunity to cross-examine T.D., these statutes do little to advance his equal protection argument.
¶ 24 Stout does correctly note, however, that a provision within the SVP statutes, RCW 71.09.060(2), impliedly affords a confrontation right to SVP detainees who were previously found incompetent to stand trial. That statute gives incompetent SVP detainees "all constitutional rights available to defendants at criminal trials." RCW 71.09.060(2). Thus, Stout has correctly identified a classification that affords a confrontation right to some SVP detainees and not others.
¶ 25 However, Stout does not carry his burden of proof with regard to showing that there is no rational basis for the classification. He merely asserts that, "[t]he differences between Mr. Stout and a person committed under that section of the sexually violent predator law also do not justify different procedural protections." Pet'r's Suppl. Br. at 12. He offers no further analysis. What is more, a rational basis for the distinction between competent and incompetent SVP detainees with regard to constitutional protections is readily discernable. An incompetent SVP detainee has not yet stood trial for the underlying criminal offense that predicates the SVP petition against him. See RCW 71.09.060(2). A competent SVP detainee has been convicted or charged under the criminal justice system. See RCW 71.09.020(16). Thus, the competent SVP detainee had an opportunity to contest the charges against him with the full panoply of constitutional rights afforded to a criminal defendant.[15] In contrast, the incompetent SVP detainee has not yet been afforded an opportunity to exercise his criminal trial rights. It is rational, then, to allow him or her to do so at the SVP commitment proceeding, while the competent SVP detainee is not afforded another opportunity to do so. Therefore, we hold that the extension of a confrontation right to some SVP detainees *97 and not others poses no equal protection violation.
¶ 26 3. Subpoena Request: A reluctant out-of-state witness cannot be compelled to testify by subpoena in a civil matter. See Rice v. Janovich, 109 Wash.2d 48, 57, 742 P.2d 1230 (1987). However, a witness in a criminal matter may be subpoenaed under RCW 10.55.060. Stout urges this court to extend use of RCW 10.55.060 to parties in an SVP proceeding. Pet'r's Suppl. Br. at 13. He offers no authority on which this court could rest such a holding, and we decline to do so.

C. Ineffective Assistance of Counsel Claim
¶ 27 Stout claims he received ineffective assistance of counsel at his commitment trial. Specifically, he asserts that counsel was deficient in that she failed to object to the admission of facts surrounding Stout's 1982 acquittal for rape and admission of his convictions for nonsex offenses. Pet. for Review at 16. In order to prevail on an ineffective assistance of counsel claim, the claimant must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant, "i.e., that there is a reasonable possibility that, but for the deficient conduct, the outcome of the proceeding would have differed." State v. Reichenbach, 153 Wash.2d 126, 130, 101 P.3d 80 (2004). In applying this two-part test, we presume counsel was effective. Id.
¶ 28 Stout claims his trial counsel should have objected during his testimony concerning his 1982 rape charge and subsequent acquittal. At his commitment trial, the State questioned Stout about an incident that occurred in 1982. In response to questioning, Stout testified that one evening after leaving a bar he approached a stranger, K.W., and propositioned her for sex. RP at 34-37. He testified that as the two engaged in sexual intercourse, the police arrived. Id. In response to questioning, Stout conceded that K.W. yelled for help, saying she was being raped. Id. Her face was swollen and her lip was bloody. Id. Stout was charged with attempted rape in the second and third degree. Id. He was acquitted by a jury. Id.; CP at 324. These facts are not in dispute. CP at 324 (commitment court's unchallenged findings of fact regarding the incident). However, Stout now claims that because he was acquitted, the State was collaterally estopped from presenting evidence of the facts from the 1982 incident and that trial counsel was deficient in not so objecting.
¶ 29 Stout is incorrect. He cannot show that the State should have been collaterally estopped from introducing evidence of the 1982 incident, and he therefore cannot show counsel's failure to object on those grounds was deficient. In order to apply collateral estoppel against the State, Stout must show that:
(1) the issue decided in the prior adjudication is identical to the one presented in the current action, (2) the prior adjudication must have resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication, and (4) precluding relitigation of the issue will not work an injustice on the party against whom collateral estoppel is to be applied.
Clark, 150 Wash.2d at 913, 84 P.3d 245. The Court of Appeals correctly held that the issue in the 1982 trial and the issue in Stout's SVP commitment were not identical. Stout, 128 Wash.App. at 29, 114 P.3d, 658. In the 1982 rape trial, the issue was whether Stout attempted to rape K.W. Id. In the SVP proceeding, the issue was whether Stout is a sexually violent predator. To that end, the State sought to introduce evidence that Stout has a history of approaching strangers for sex and then becoming abusive or violent when rebuffed. Suppl. Br. of Resp't at 21. Evidence that K.W. was a stranger, that the two had some sort of sexual encounter, that she yelled for help, and that her face was bloody and swollen is relevant to that proposition. The State did not attempt to prove that Stout did in fact rape K.W. in 1982, RP at 34-36, nor did the commitment court make such a finding. CP at 324. Thus, the State would not have been collaterally estopped from introducing evidence of the undisputed facts of the 1982 incident had Stout's attorney *98 made such an objection, and it was therefore reasonable for Stout's counsel to forgo such an objection.
¶ 30 Stout also claims that trial counsel was deficient when she failed to object to the admission of his convictions for prior non-sex offenses. However, his trial counsel did object initially to the relevance of Stout's prior nonsex offenses when the first conviction was introduced at trial, and she was overruled. RP at 33-34. It is unclear on what grounds other than relevance Stout believes his attorney should have based additional objections, if any, because he argues that this court has held such convictions are not relevant in an SVP proceeding. Pet. for Review at 17 (citing Young, 122 Wash.2d at 54, 857 P.2d 989). Since his attorney did object to relevance and was overruled, it would seem her performance was not deficient in refraining from further objections on relevance grounds.[16] Therefore, we need not consider the prejudice prong of Stout's ineffective assistance claim but hold that his trial counsel's performance was not deficient.

D. Trial Court's Conclusion of Law
¶ 31 The trial court made a specific finding of fact that Stout has serious difficulty controlling his behavior of engaging in sex with non-consenting others. CP at 348 (FOF 117). The trial court did not make a corresponding conclusion of law, though it did conclude that Stout's criminal history and diagnoses of paraphilia and antisocial personality disorder "make him likely to engage in predatory acts of sexual violence if not confined in a secure facility." CP at 332 (Conclusion of Law 6). Stout argues that an SVP commitment is not permissible unless the trial court makes a specific conclusion of law about an SVP detainee's ability to control his behavior.
¶ 32 Our holding in In re Detention of Thorell, 149 Wash.2d 724, 72 P.3d 708 (2003) rejects such an argument. In Thorell, we held that a "fact finder need not make a separate finding that a person committed . . . as an SVP has serious difficulty controlling behavior." Id. at 730, 72 P.3d 708. We explained that:
[The United States Supreme Court] requires a determination that a potential SVP has serious difficulty controlling dangerous, sexually predatory behavior, but does not require a separate finding to that effect. The United States Supreme Court did not impose a new element in SVP commitment proceedings when explaining [that some link must exist between difficulty controlling behavior, the individual's mental disorder, and a history of sexually predatory behavior].
Id. at 735-36, 72 P.3d 708. If the fact finder is not required to make a separate finding about a potential SVP's ability to control his or her behavior, it stands to reason that fact finder would not be required to make a legal conclusion about it eitherparticularly where difficulty controlling behavior is not an element the State must show. Id. Here, the trial court did make a factual finding regarding Stout's ability to control his behavior. In its conclusions of law, the trial court linked that assessment to its findings regarding Stout's criminal history, mental abnormality, and personality. Thorell does not require more. We hold that the trial court did not err when it made no specific conclusion of law about Stout's ability to control his behavior.

*99 III

Conclusion
¶ 33 Because a sexual motivation was proved, we hold that the State was not required to reprove the underlying facts comprising Stout's burglary conviction. We also hold that given the myriad procedural safeguards surrounding an SVP trial, an SVP detainee does not have a due process right to confront witnesses at his or her commitment trial nor at depositions. In addition, Stout's counsel did not render ineffective assistance at his commitment trial. Finally, we further hold that a commitment court is not required to reach a specific conclusion of law regarding a detainee's ability to control his behavior. The Court of Appeals is affirmed.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justice CHARLES W. JOHNSON, Justice SUSAN OWENS and Justice MARY E. FAIRHURST.
MADSEN, J. (concurring).
¶ 34 Although I concur in the result reached by the majority, I am disturbed by the majority's attempt to sever the right to confrontation from the right to cross-examination in determining what process is due in a sexually violent predator (SVP) proceeding. I agree with the majority that the confrontation clause does not mandate a right of confrontation in civil proceedings. However, the right to be heard and to confront witnesses is considered fundamental to a fair trial, even in the civil context, where an important right is at stake. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
¶ 35 The majority correctly states that the right to confront witnesses in a civil proceeding is determined under considerations of procedural due process and that the due process right to be heard in a civil proceeding is not absolute. The Supreme Court has noted that "`[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" Stanley v. Illinois, 405 U.S. 645, 650, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (quoting Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). Cafeteria & Restaurant Workers firmly established that "what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." Id. at 895, 81 S.Ct. 1743; see also Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), superseded by statute as recognized in State ex rel. K.M. v. W. Va. Dep't of Health & Human Res., 212 W.Va. 783, 793, 575 S.E.2d 393 (2002).
¶ 36 I part company with the majority, however, in severing confrontation and cross-examination in analyzing what process is due an SVP defendant. Without citing any authority, the majority treats confrontation and cross-examination as if they were two separate interests. They are not. As Dean Wigmore correctly pointed out in his treatise on evidence,
[t]here never was at common law any recognized right to an indispensable thing called confrontation as distinguished from cross-examination. There was a right to cross-examination as indispensable, and that right was involved in and secured by confrontation; it was the same right under different names.
5 JOHN HENRY WIGMORE, Evidence in Trials at Common Law § 1397, at 158 (James H. Chadbourn rev.1974).
¶ 37 Confrontation is paramount to an ability to examine and cross-examine witnesses effectively. It involves the ability to evaluate blinking eyelids or expressive facial gestures and to hear the hesitation in the voice or observe the uneasy fidgeting of a witness, uncomfortable under sharp questioning.
¶ 38 Determining credibility is a critical part of the fact finder's role. Fact finders consider many factors when determining whether evidence is credible, including demeanor, bias, opportunity, capacity to observe and narrate the event, character, prior inconsistent statements, contradiction, corroboration, and plausibility. Fact finders are in the best position to resolve issues of credibility and determine how much weight to give evidence because they see and hear the *100 witnesses. State v. Maxfield, 125 Wash.2d 378, 385, 886 P.2d 123 (1994) (trier of fact is in better position to assess the credibility of the witnesses and observe the demeanor of those testifying); see also Morse v. Antonellis, 149 Wash.2d 572, 70 P.3d 125 (2003). This general rule applies not only in traditional court settings but is equally important in administrative proceedings. See Penasquitos Vill., Inc. v. Nat'l Labor Relations Bd., 565 F.2d 1074, 1078 (9th Cir.1977) ("[w]eight is given the administrative law judge's determinations of credibility for the obvious reason that he or she `sees the witnesses and hears them testify, while the Board and the reviewing court look only at cold records'" (quoting Nat'l Labor Relations Bd. v. Walton Mfg. Co., 369 U.S. 404, 408, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962))); see also In re Discipline of Whitt, 149 Wash.2d 707, 721-22, 72 P.3d 173 (2003) (generally a hearing officer is in a better position to assess the credibility of a witness).
¶ 39 Witness demeanor is a crucial part of determining credibility. Demeanor relates to a person's "manner . . . bearing, mien: facial appearance." Webster's Third New International Dictionary 599 (2002). It is "the carriage, behavior, bearing, manner and appearance of a witness." Dyer v. MacDougall, 201 F.2d 265, 268, 269 (2d Cir.1952) ("[t]he words used are by no means all that we rely on in making up our minds about the truth of a question that arises in our ordinary affairs, and it is abundantly settled that a jury is as little confined to them as we are"). A witness's demeanor includes the "expression[s] of his countenance, how he sits or stands, whether he is inordinately nervous, his coloration during critical examination, the modulation or pace of his speech and other non-verbal communication." Penasquitos Village, 565 F.2d at 1078-79. As we have often noted, appellate courts are reluctant to disregard fact finders' determinations of credibility because appellate courts are unable to observe witness demeanor. Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wash.2d 364, 369-70, 798 P.2d 799 (1990); State v. Zhao, 157 Wash.2d 188, 202, ¶ 26, 137 P.3d 835 (2006) (appellate court defers to the trier of fact on issues of credibility); In re Det. of Halgren, 156 Wash.2d 795, 811, ¶ 33, 132 P.3d 714 (2006) (this court will not second guess the jury's determinations on credibility in an SVP proceeding).
¶ 40 RCW 71.09.060 provides a jury trial as part of the procedural protections afforded an SVP. The statute also requires the State to make its proof "beyond a reasonable doubt" and it requires a unanimous jury verdict for a commitment as an SVP. According to the majority, due process requires that the defendant in an SVP trial have the opportunity to cross-examine witnesses against him, even though the statute does not explicitly provide this right. Just as the majority finds that the right to cross-examination is implicit in an SVP proceeding, based on the nature of the other rights afforded to an SVP defendant, I would hold that the right to confront witnesses is implicit in the right to cross-examination. Accordingly, common sense and fairness lead me to conclude that due process requires both.
¶ 41 Instead of treating confrontation and cross-examination as separate "procedures" for purposes of due process, as the majority does, I would follow the United States Supreme Court's decision in Morrissey. In the context of a parole revocation hearing, the Court stated:
We cannot write a code of procedure; that is the responsibility of each State. Most States have done so by legislation, others by judicial decision usually on due process grounds. Our task is limited to deciding the minimum requirements of due process. They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole. *101 Morrissey, 408 U.S. at 488-89, 92 S.Ct. 2593 (emphasis added) (footnote omitted). In my view, Morrissey provides the correct balance for an SVP proceeding.[1] Applying Morrissey in this case, I would affirm the trial court. The trial court admitted two telephonic, videotaped depositions from T.D. because T.D. refused to return from Michigan to testify. As suggested by the court in Morrissey, T.D.'s refusal to return, coupled with the absence of authority for the State to compel T.D.'s presence, constitutes good cause for not allowing confrontation.[2]
¶ 42 It is not only due process concerns that lead me to disagree with the majority, but also this court's strong preference for live testimony. CR 43(a)(1) provides that "[i]n all trials the testimony of witnesses shall be taken orally in open court, unless otherwise directed by the court or provided by rule or statute." The primary purpose of CR 43 is to ensure that witness statements are accurate. In re Adair, 965 F.2d 777, 780 n. 4 (9th Cir.1992) (referring to Fed.R.Civ.P. 43(a) advisory committee's note to 1937 adoption and Charles AlanWright & Arthur R. Miller, Federal Practice & Procedure § 2407 at 329 (1971)).[3] The rule presupposes that witnesses must be physically present in the courtroom to give live, oral testimony.
¶ 43 Similarly, ER 804(b)(1) demonstrates the court's strong preference for live testimony. ER 804(b)(1) provides that testimony taken in a deposition may be offered only "if the declarant is unavailable as a witness" and the party against whom the evidence is offered "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." These strong expressions of a preference for confrontation and cross-examination stem from the important considerations outlined above.
¶ 44 It is difficult to imagine where the majority's analysis will ultimately take us, but, at a minimum, I can foresee that deposition testimony, taken in the absence of the SVP defendant, will become the rule. Rather than rejecting long-established due process analysis, I would hold, as the Supreme Court did in Morrissey, that minimal due process in the context of an SVP proceeding requires the right to confrontation and cross-examination of adverse witnesses unless the trial court specifically finds good cause for not allowing confrontation. See Morrissey, 408 U.S. at 489, 92 S.Ct. 2593. I would cling to the notion that live testimony is strongly preferred and that an integral part of cross-examination is the opportunity to have witnesses present in court, testifying before the trier of fact.
WE CONCUR: Justice TOM CHAMBERS and Justice JAMES M. JOHNSON.
SANDERS, J. (dissenting).
¶ 45 Today the majority eviscerates a fundamental guaranty of liberty by denying Roy Stout, Jr., his constitutional right to confront witnesses against him. I dissent because any person threatened with involuntary and *102 indefinite commitment deserves at least minimum due process, and the United States Supreme Court as well as the precedent of this court hold the right to confrontation is an essential part of that process which is due under our state and federal constitutions.
¶ 46 Although the majority derides the right of confrontation as "`for the idle purpose of gazing upon the witness,'" the Founders viewed it as indispensable when this nation was founded. Majority at 92 n. 9.[1] Indeed, the right to confront adverse witnesses is "[o]ne of the fundamental guarantees of life and liberty," and "a right long deemed so essential for the due protection of life and liberty that it is guarded against legislative and judicial action by provisions in the Constitution of the United States. . . ." Kirby v. United States, 174 U.S. 47, 55, 56, 19 S.Ct. 574, 43 L.Ed. 890 (1899). But apparently this right is not as well-protected by our majority as the Founders and Supreme Court hoped.
¶ 47 To prove Stout was a sexually violent predator (SVP), the State introduced two depositions; however Stout was present at the taking of neither. But now Stout will be immured indefinitely, see RCW 71.09.060(1), absent any ability to confront the witness against him. The majority undercuts the right of confrontation in two respects. First, it denies the right to confrontation because SVP proceedings are "civil."[2] And second, because, says the majority, an individual right to confront witnesses against him may be "balanced" away under Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
I. The United States Supreme Court recognizes a fundamental due process right to confrontation
¶ 48 The United States Supreme Court has held due process guarantees every person threatened with involuntary incarceration the right to confront witnesses against them, whether the proceeding is civil or criminal. Specht v. Patterson, 386 U.S. 605, 607-08, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). Francis Specht argued Colorado's Sex Offenders Act was unconstitutional because he could be sentenced "for an indeterminate term of from one day to life . . . without a hearing at which [he could] confront and cross-examine adverse witnesses." Id. The Supreme Court unanimously agreed:
These commitment proceedings whether denominated civil or criminal are subject both to the Equal Protection Clause of the Fourteenth Amendment . . . and to the Due Process Clause. We hold that the requirements of due process were not satisfied here.
Id. at 608, 87 S.Ct. 1209 (emphasis added). The majority tries to distinguish Specht, suggesting the Colorado statute was "criminal in purpose." Majority at 94 n. 12 (emphasis omitted).[3] However, the Court's holding unquestionably says any involuntary commitment proceeding, civil or criminal, is subject to due process. The Court enunciated those minimal due process protections that must always be provided:
Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to *103 cross-examine, and to offer evidence of his own.
Specht, 386 U.S. at 610, 87 S.Ct. 1209 (emphasis added).[4]
II. Washington precedent also recognizes a fundamental due process right to confrontation
¶ 49 Not content with ignoring the Supreme Court of the United States, the majority also ignores its own precedent. Before today, any involuntary commitment, whether civil or criminal, required fundamental due process protections. We have held:
"It is the likelihood of involuntary incarcerationwhether for punishment as an adult for a crime, rehabilitation as a juvenile for delinquency, or treatment and training as a feebleminded or mental incompetentwhich commands observance of the constitutional safeguards of due process."
Quesnell v. State, 83 Wash.2d 224, 230, 517 P.2d 568 (1973) (relying on Specht) (quoting Heryford v. Parker, 396 F.2d 393, 396 (10th Cir.1968).) And these "constitutional safeguards of due process" include the right of confrontation. Quesnell, 83 Wash.2d at 230, 240 n. 21, 517 P.2d 568 ("Such fundamental rights pertinent to the mental illness proceeding include confrontation and cross-examination.").[5]
¶ 50 Quesnell concerned involuntary civil commitment for the mentally ill. But Stout's involuntary confinement may be accomplished only with that process which is due, regardless of motive.[6]
III. Confrontation is a fundamental right
¶ 51 The majority misunderstands confrontation as a mere procedural protection to guard against error. But when a person is threatened with involuntary confinement, he is entitled to the fundamental right of confrontation. See Specht (fundamental language). Justice Harlan joined the Specht majority for the reasons he enunciated previously in Pointer:
For me this state judgment must be reversed because a right of confrontation is "implicit in the concept of ordered liberty," Palko v. Connecticut, 302 U.S. 319, 325, [58 S.Ct. 149, 82 L.Ed. 288 (1937),] reflected in the Due Process Clause of the Fourteenth Amendment independently of the Sixth.
Pointer v. Texas, 380 U.S. 400, 408, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (Harlan, J., concurring).
¶ 52 The majority mistakes the substantive for procedural when it misapplies Mathews balancing. Mathews dealt with administrative procedures, not fundamental rights. Mathews v. Eldridge, 424 U.S. at 332, 96 *104 S.Ct. 893 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of `liberty' or `property' interests. . . .").[7] In a sense, allowing a potential SVP to confront witnesses against him is a procedure, but one expressly mandated by the Sixth Amendment and Washington Constitution article I, section 22. The majority would not balance away one's right to counsel by inquiring about an "erroneous deprivation of that interest through existing procedures," see majority at 93, so why balance away the right to confront your accuser?
¶ 53 Because it claims the SVP proceeding is already fair, the majority argues Stout does not need his constitutional right of confrontation. Majority at 93-94. These basic rights, however, are expressly guaranteed, and this violation cannot be dismissed whenever it is adjudged "fair" to do so. "It is true enough that the purpose of the rights set forth in [the Sixth] Amendment is to ensure a fair trial; but it does not follow that the rights can be disregarded so long as the trial is, on the whole, fair." United States v. Gonzalez-Lopez, ___ U.S. ___, 126 S.Ct. 2557, 2562, 165 L.Ed.2d 409 (2006). Due process "commands, not that a trial be fair, but that a particular guarantee of fairness be provided." Id. Specht unequivocally holds the right of confrontation is one particular guaranty of fairness that must be provided.
¶ 54 The majority ignores Specht because it is pre-Mathews. Majority at 94 n. 12. But the United States Supreme Court continues to cite Specht to hold confrontation is a minimal safeguard for any commitment proceeding.[8]See Vitek v. Jones, 445 U.S. 480, 491-94, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980).[9] The majority claims Vitek relied on Specht only to find "`involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual.'" Majority at 95 n. 13 (quoting Vitek, 445 U.S. at 493, 100 S.Ct. 1254). But the question before the Vitek Court was "whether after a *105 conviction for robbery, Jones retained a residuum of liberty that would be infringed by a transfer to a mental hospital without complying with minimum requirements of due process." Vitek, 445 U.S. at 491, 100 S.Ct. 1254. The Court held "the transfer of a prisoner from a prison to a mental hospital must be accompanied by appropriate procedural protections." Id. And the Court affirmed the lower court holding, which included as one of these appropriate procedural protections, "[a]n opportunity at the hearing to present testimony of witnesses by the defense and to confront and cross-examine witnesses called by the state, except upon a finding, not arbitrarily made, of good cause for not permitting such presentation, confrontation, or cross-examination. . . ." Id. at 494-95, 100 S.Ct. 1254.
¶ 55 The United States Supreme Court recognizes Specht speaks to fundamental rights, while Mathews applies to nonfundamental procedures. In Parham, another post-Mathews case, both the majority and the dissent cited to Specht for support. Parham v. J.R., 442 U.S. 584, 600, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). In his dissent, Justice Brennan explicated Specht's specific holding:
[O]ur cases have made clear that commitment to a mental hospital "is a deprivation of liberty which the State cannot accomplish without due process of law.". . . . Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967) (sex offender commitment following criminal conviction). . . . At such hearings they must be accorded the right to "be present with counsel, have an opportunity to be heard, be confronted with witnesses against [them], have the right to cross-examine, and to offer evidence of [their] own." Specht v. Patterson, supra, at 610, 87 S.Ct. 1209.
Parham, 442 U.S. at 627, 99 S.Ct. 2493 (Brennan, J., dissenting).
¶ 56 The First Circuit has also relied on Specht, even post-Mathews, to hold an inmate must be present at a hearing for involuntary commitment. United States v. Frierson, 208 F.3d 282, 287-88 (1st Cir.2000). Due process requires "`[the person] be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own.'" Id. at 287 (quoting Specht, 386 U.S. at 610, 87 S.Ct. 1209). The Fourth Circuit has held a commitment hearing could be via videoconference because it did not "preclude the respondent from confronting . . . the witnesses." United States v. Baker, 45 F.3d 837, 843 (4th Cir. 1995). The Fourth Circuit relied on Vitek and found "the right to confront" to be a minimum due process safeguard. Id. ("Vitek makes clear that due process entitles the respondent at a commitment hearing to some right to confront and cross-examine the witnesses against him. . . ."). Only when it discussed additional procedures, beyond the minimum requirements, did the Court employ Mathews. Id. at 844.
¶ 57 Stout may be imprisoned for life, but today the majority denies him his basic due process right to defend himself by confronting witnesses against him. Both the United States Supreme Court and the Washington State Supreme Court recognize fundamental due process protections for any involuntary commitment proceeding, whether civil or criminal. The right to confront adverse witnesses is a fundamental protection that must be enforced.
¶ 58 And I dissent.
NOTES
[1] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[2] The facts of these two encounters bear reciting because they closely resemble one another. Stout was not charged for any crime in relation to acts committed against R.S., but like K.O., R.S. testified about an encounter she had with Stout in 1990, two years before K.O.'s encounter with Stout. Both R.S. and K.O. were strangers to Stout at the time of their respective incidents. Both women were traveling alone by car late at night. Stout flashed his pickup truck lights at both women from behind. Believing they knew the driver, both women stopped their cars. Having stopped the women, Stout approached their cars and propositioned them for sex. In both encounters the women refused and Stout responded with force. Respectively, he punched R.S. in the face and grabbed K.O.'s breast and arm. Both women managed to flee after the initial contact.
[3] Stout does not appear to dispute the finding that his actions toward T.D. were sexually motivated. Pet. for Review at 7 ("While [T.D.'s] depositions supported the finding of sexual motivation, they also proved Mr. Stout did not commit a burglary.").
[4] The burden upon a party asserting collateral estoppel against another party is discussed infra at 97-98.
[5] The Court of Appeals opinion does not actually address the issue of collateral estoppel or apply it against Stout. It merely holds that the State was not required under the SVP statute to reprove the facts comprising Stout's conviction, only the fact of his conviction. Stout, 128 Wash.App. at 26-27, 114 P.3d 658. Stout apparently argues that holding was an impermissible application of collateral estoppel against him.
[6] Before the Court of Appeals, Stout argued that "because the definition of a `sexually violent offense' [under RCW 71.09.020(15)] describes the listed offenses as `acts,' the act must be re-proven." Suppl. Br. of Resp't at 10. But as the State notes, Stout's interpretation of the statute gives no effect to the word "convicted." We cannot construe statutes so as to render language meaningless. State v. Haddock, 141 Wash.2d 103, 112, 3 P.3d 733 (2000).
[7] As the State points out, Stout was given the opportunity to relitigate the facts comprising his burglary conviction, and the commitment court simply did not find in his favor. Since Stout testified as to his version of the events beyond the narrow question of whether the burglary was sexually motivated and the commitment court expressly found his testimony less credible than T.D.'s, the State correctly notes that Stout was afforded the opportunity to offer evidence that a burglary was not committed (i.e. that he was in T.D.'s residence with permission). Such an opportunity tends to belie Stout's collateral estoppel argument.
[8] Stout also argues the State's evidence disproves his burglary conviction because in her deposition T.D stated that the incident in question arose while Stout was in her home upon her invitation, and that he left voluntarily. CP at 91, 95-96, 121-22, 125. We have held that a defendant who exceeds the scope of his invitation may commit burglary. State v. Collins, 110 Wash.2d 253, 254-55, 751 P.2d 837 (1988) (defendant who was invited into the home of strangers to use the phone and thereafter sexually assaulted the two occupants committed burglary). Here, although T.D. may have given Stout permission to enter her home, he exceeded the scope of his invitation when he forced unwanted sexual contact upon T.D. Even if Stout had not expressly admitted to remaining unlawfully in T.D.'s home in his guilty plea, T.D.'s deposition does not refute the validity of his burglary conviction.
[9] Because Stout did have an opportunity to cross-examine T.D., and rightly so, the particular facts of this case necessitate separate consideration of confrontation in the face-to-face sense of the word. Contrary to the assertions of the concurrence, our discussion here should not be construed as creating the potential of a due process right to confrontation wholly unrelated to cross-examination. Rather, our discussion is premised on whether any purpose is served in recognizing a due process right to confrontation where cross-examination has been achieved. See Davis v. Alaska, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974):

"The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers."
Id. (emphasis in original) (quoting 5 John Henry Wigmore, Evidence § 1395, at 123 (3d ed.1940)).
[10] At oral argument Stout conceded that because the State has no mechanism to compel the presence of an out-of-state witness at trial, he had no due process right to confrontation at trial. Nevertheless, we take this opportunity to address the confrontation question put before us in Stout's petition and argued before us in briefing. Additionally, in briefing Stout appeared to rest the contention that he had a right to be present at the deposition entirely upon the Sixth Amendment, rather than any due process right. Pet'r's Suppl. Br. at 14. For the reasons stated above, we reject any assignment of error premised on the Sixth Amendment. At oral argument, however, Stout appeared to make a due process challenge in connection to his claimed right to be present at a deposition. Therefore, we will consider this deposition argument in the context of a due process right.
[11] We note again that in briefing, Stout's argument concerning his claimed right to be present at the deposition exclusively rested on the Sixth Amendment or case law recognizing civil commitments as criminal proceedings, though neither theory is applicable here. As such, Stout offered no Mathews analysis to this court indicating how the State's interest and any burdens it might carry would balance out with his interest in being present at the deposition. Neither did he address this factor at oral argument. The State, however, did suggest at oral argument that transport of a SVP detainee from a secure facility may be financially burdensome on the State, perhaps prohibitively so. Thus, where Stout's argument that he should have been present at the deposition is concerned, the limited argument presented to us tips the third factor of the Mathews test in favor of the State.
[12] Stout cites several cases in support of his due process right to confront that actually concern the Sixth Amendment right to confront. Pet'r's Suppl. Br. at 9 (citing, for example, Coy v. Iowa, 487 U.S. 1012, 1016-20, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) and State v. Rohrich, 132 Wash.2d 472, 477, 939 P.2d 697 (1997)). Therefore, they are not applicable to his case. Likewise, at least one of the cases Stout cites that guarantees a due process right to confrontation deals with a 1967 commitment statute that the United States Supreme Court found to be criminal in purpose. Specht v. Patterson, 386 U.S. 605, 609-11, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). The United States Supreme Court has expressly found Washington's sex offender commitment statutes are civil, not criminal. Seling, 531 U.S. at 260, 121 S.Ct. 727. The dissent argues that a case not cited by either party, Quesnell v. State, 83 Wash.2d 224, 517 P.2d 568 (1973), establishes a right to confrontation in any involuntary commitment proceeding. See Dissent at 103. This case is distinguishable for the same reasons the cases Stout cites are distinguishable. Quesnell indicates that there is a right of confrontation in civil commitments, but that case makes reference to confrontation in a footnoteconfrontation was not actually at issue in the case. See 83 Wash.2d at 240 n. 21, 517 P.2d 568; see also id. at 242 n. 23, 517 P.2d 568 ("Our ruling in this case is limited strictly to the single issue involved. This is simply that the right to trial by jury must be granted upon timely demand in incompetency proceedings."). In addition, Quesnell collapses confrontation into cross-examination. In the authority Quesnell cites, Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the United States Supreme Court was concerned that a prisoner was robbed of his confrontation and cross-examination rights, with particular focus on his cross-examination rights. Id. at 404-05, 85 S.Ct. 1065. Not only did the Pointer Court express specific concern about confrontation as it is related to cross-examination, which is not at issue here, but it also dealt with a criminal context, which carries a confrontation right not applicable to civil cases. See id. at 400-02, 85 S.Ct. 1065; Abd-Rahmaan, 154 Wash.2d at 288, 111 P.3d 1157. Thus, not only is Quesnell's discussion of confrontation rights dicta in a footnote, it is also premised on case law that is inapplicable to a civil commitment. Additionally, both Specht and Quesnell are pre-Mathews and thus distinguishable.
[13] The dissent argues that Mathews should not apply here because "the United States Supreme Court continues to cite Specht to hold confrontation is a minimal safeguard for any commitment proceeding." Dissent at 104. However, two of the cases to which the dissent cites to support this argument do not ever mention confrontation. See Addington, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323; O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). Furthermore, in Donaldson "the Court" did not cite Specht; only Chief Justice Burger cited the case in his lone concurrence. See Donaldson, 422 U.S. at 580, 95 S.Ct. 2486 (Burger, C.J., concurring). In the other case cited by the dissent, the Court cited Specht only for the proposition that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual." Vitek, 445 U.S. at 493, 100 S.Ct. 1254. The dissent argues that Vitek established that confrontation is an "appropriate procedural protection[]" before a prisoner can be transferred to a mental health facility. Dissent at 104. However, as discussed above, this case can be distinguished because it did not apply the Mathews test. See supra at 95. Similarly, the dissent argues that Quesnell still applies even post-Mathews; however, the case upon which the dissent relies for that proposition nowhere discusses confrontation. See State v. Wilcox, 92 Wash.2d 610, 600 P.2d 561 (1979).

The dissent further argues that "[t]he United States Supreme Court recognizes Specht speaks to fundamental rights, while Mathews applies to non fundamental procedures." Dissent at 105. The dissent cites Parham v. J.R., 442 U.S. 584, 600, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), to support this proposition. However, the Parham majority cited Specht only to establish that a child has a substantial liberty interest in not being confined. See Parham, 442 U.S. at 600, 99 S.Ct. 2493. This is not a proposition with which we disagree. See supra at 93 ("There is no dispute that Stout has a significant interest in his physical liberty.").
[14] Though Stout makes no argument that the Washington legislature has created a statutory right to confrontation, he cites to several statutes from other states that he claims afford SVP detainees a confrontation right. Pet'r's Suppl. Br. at 10-11 (citing N.J. Stat. Ann. § 30:4-27.31 (West 1997); Minn.Stat. Ann. § 253B.08(5)(a) (West 2003); N.D. Cent.Code § 25-03.3-13 (2002); Tex. Health & Safety Code Ann. § 841.061(d) (Vernon 2003); Va.Code Ann. § 37.2-901 (2005); Wis. Stat. Ann. § 980.05(1m) (West 1998); 725 Ill. Comp. Stat. 207/25(c)(3) (2005)). With the exception of Wisconsin, none of the state statutes cited by Stout guarantee a right to confront (Wisconsin affords SVP detainees all the same constitutional rights as criminal defendants, which presumably includes the confrontation right). The cited statutes refer only to a detainee's right to cross-examine.
[15] This is true even of detainees like Stout, who pleaded guilty rather than go to trial. The fact remains that such a detainee did have the opportunity to a full criminal trial with all its attendant protections but knowingly and voluntarily chose to forgo it.
[16] Moreover, Stout mischaracterizes this court's holding in Young. In Young, this court held that a particular nonsex offense (a bomb threat) introduced by the State in Young's commitment trial was not relevant to the question of whether Young was a sexually violent predator. 122 Wash.2d at 54, 857 P.2d 989. In part, the court based its conclusion as to the bomb threat's relevance on the fact that the jury instructions made it clear that only sex offenses or sexually motivated felonies were to be considered in making the SVP determination. Id. Here, no such jury instructions were present. Stout's lengthy, nonsexual criminal history was relevant to his diagnosis of antisocial personality disorder. RP at 33, 214-15, 220, 223-24. His diagnosis is "a fact of direct consequence to the issue of whether Mr. Stout is a sexually violent predator." Suppl. Br. of Resp't at 24 (citing RCW 71.09.020(16) (sexually violent predator is one who has been convicted of or charged with a crime of sexual violence and who suffers from mental abnormality or personality disorder)). Thus, it was reasonable for trial counsel to refrain from repeated objections as to the relevance of such evidence, and her performance in this respect cannot be characterized as deficient.
[1] The majority attempts to distinguish Morrissey, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, Goldberg, 397 U.S. at 279, 90 S.Ct. 1011 (Black, J., dissenting) (welfare termination hearing should include right to confront), Greene v. McElroy, 360 U.S. 474, 496-97, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (individual should have had opportunity to confront and cross-examine adverse witnesses before his security clearance was revoked by Department of Defense), and Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), superseded by statute as recognized in Baldwin v. Benson, 584 F.2d 953 (10th Cir.1978) (in parole revocation context, minimal due process includes right to confront) on the basis that these cases predate Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This is an odd distinction, and not convincing, in light of the fact that Mathews cited to and drew heavily upon these cases in formulating its analysis and reaching its conclusion. In other words, Mathews did not abandon or repudiate its forebearers; rather it sprang from the brow of Morrissey, Goldberg, Greene, Gagnon, and many of the Court's other, earlier, due process opinions.
[2] As the majority points out, Stout did not raise a confrontation issue in the trial court. Hence, the trial court did not make a good cause finding. However, the record demonstrates good cause.
[3] Where the language of this court's rules is the same as the language of the federal rules, this court may look for guidance from courts applying the federal rule. Beal v. City of Seattle, 134 Wash.2d 769, 777, 954 P.2d 237 (1998); Carson v. Fine, 123 Wash.2d 206, 223, 867 P.2d 610 (1994).
[1] The majority quotes this language from Davis v. Alaska, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In Crawford, the Supreme Court gives a lengthy historical treatment of this indispensable right. Crawford v. Washington, 541 U.S. 36, 43, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). See also Pointer v. Texas, 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) ("There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.").
[2] Both this court and the United States Supreme Court have dubbed SVP procedures as "civil." Seling v. Young, 531 U.S. 250, 261, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001). The United States Supreme Court in Seling relied upon this court's determination the procedure was civil and upon its determination that a similar Kansas civil statute still comported with substantive due process. Id. Confrontation was not before the Court in either case.
[3] In the same footnote, the majority tries to distinguish Specht because it was pre-Mathews. That argument will be discussed, infra, Part III.
[4] The Court quoted from a Third Circuit case with approval:

"A defendant in such a proceeding is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial, including the right to confront and cross-examine the witnesses against him."
Specht, 386 U.S. at 609-10, 87 S.Ct. 1209 (quoting United States ex rel. Gerchman v. Maroney, 355 F.2d 302, 312 (1966)).
[5] The majority claims we should simply ignore this language because it appears in a footnote. Majority at 94 n. 12. But no matter where it decided to say it, the Quesnell Court clearly said confrontation is a fundamental due process right. Additionally, the majority claims Quesnell is immaterial because it cites Pointer v. Texas, a case that concerned a criminal trial. Id. (citing Pointer, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923.) But this is inconsequential because Quesnell itself dealt with civil commitment proceedings. Also, Quesnell relied on Specht as well as Pointer, where, as discussed above, the United States Supreme Court said both criminal and civil commitment proceedings are subject to the Due Process Clause. Specht, 386 U.S. at 608, 87 S.Ct. 1209.
[6] The Court in Quesnell found:

"Measures which subject individuals to the substantial and involuntary deprivation of their liberty contain an inescapable punitive element, and this reality is not altered by the facts that the motivations that prompt incarceration are to provide therapy or otherwise contribute to the person's well-being or reform."
Quesnell, 83 Wash.2d at 231 n. 6, 517 P.2d 568 (quoting FRANCIS A. ALLEN, THE BORDERLAND OF CRIMINAL JUSTICE 37 (1964)). See In re Det. of Brock, 126 Wash.App. 957, 963, 110 P.3d 791 (2005).
[7] The majority repeatedly asserts due process is a flexible concept. This is true when administrative procedures are scrutinized:

[D]ue process is flexible and calls for such procedural protections as the particular situation demands. Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected.
Mathews, 424 U.S. at 334, 96 S.Ct. 893 (citation omitted, internal quotation marks omitted, emphasis added). A fundamental right is not as flexible.
[8] In Addington, the Court reemphasized its holding in Specht: "This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (citations omitted). In Donaldson, the Court said: "There can be no doubt that involuntary commitment to a mental hospital, like involuntary confinement of an individual for any reason, is a deprivation of liberty which the State cannot accomplish without due process of law." O'Connor v. Donaldson, 422 U.S. 563, 580, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (Burger, C.J., concurring) (citing Specht, 386 U.S. at 608, 87 S.Ct. 1209). Both cases are post-Mathews. Quesnell is also good law and has been cited, post-Mathews:

[Q]uite apart from any statutory requirement, it is a fundamental precept of our system that a deprivation of liberty can occur only after affording due process. The commitment of a criminally insane person is a deprivation of liberty and subject to this constitutional guaranty of due process.
State v. Wilcox, 92 Wash.2d 610, 612, 600 P.2d 561 (1979) (citing Quesnell, 83 Wash.2d at 229-30, 517 P.2d 568). The majority ignores these cases because they do not specifically deal with confrontation. But this misses the point. These cases show Specht is still good law, even post-Mathews. And Specht itself holds confrontation is one of several fundamental due process right owed to any defendant in a civil commitment proceeding. Specht, 386 U.S. at 610, 87 S.Ct. 1209.
[9] The Fourth Circuit summarized Vitek's holding, finding the Supreme Court identified the following as minimum safeguards to which due process entitles a defendant in a commitment proceeding: "a hearing at which evidence is presented and the [patient] is provided a chance to be heard and to present documentary evidence as well as witnesses; the right to confront and to cross-examine government witnesses at the hearing, except upon a showing of good cause; an independent decisionmaker; a written, reasoned decision; the availability of an independent advisor, not necessarily an attorney; and effective and timely notice of the pendency of the hearing and of all these rights." United States v. Baker, 45 F.3d 837, 843 (4th Cir.1995) (citing Vitek, 445 U.S. at 494-96, 100 S.Ct. 1254) (footnote omitted).