YU, J.
*1001¶ 1 This case concerns the extent to which a criminal record may preclude a person from supporting herself through lawful employment in her chosen field. In 1988, petitioner Christal Fields pleaded guilty to attempted second degree robbery for trying to snatch a woman's purse. As a result, Fields was permanently disqualified from working at any licensed childcare facility in Washington pursuant to regulations promulgated by respondent Department of Early Learning (DEL). Fields raises state and federal constitutional challenges to these regulations, both facially and as applied to her. We decline to reach Fields's facial challenges and state constitutional arguments. However, we hold that DEL's regulations prohibiting any individualized consideration of Fields's qualifications at the administrative level violate Fields's federal right to procedural due process as applied. We therefore reverse the Court of Appeals and remand for further administrative proceedings consistent with this opinion.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
¶ 2 The relevant factual background as recounted by the Court of Appeals is undisputed:
Fields grew up in a dysfunctional home environment with rampant drug abuse. At the age of 16, she became homeless and turned to prostitution and drugs. In 1988[, at age 22], Fields attempted to snatch a purse to help pay for her drug habit. She pleaded guilty to attempted second degree robbery.
Fields continued to lead a troubled life until 2006 when she turned her life around by successfully completing a drug program. She has been clean and sober ever since. For two years she resided in group housing. During this time, she was promoted to resident manager because of her responsibility and commitment to working with others. Many support letters from employers and coworkers since then attest to Fields's character.
On February 6, 2013, Fields submitted a portable background check to DEL. Based on the information Fields provided, DEL cleared Fields to work at a childcare facility. She worked in that childcare facility for six months after she received her background clearance. Fields loves working with children and has taken advantage of every available training opportunity to improve her skills.
A local news report on childcare centers brought Fields's undisclosed criminal history to DEL's attention.
Fields v. Dep't of Early Learning , No. 75406-8-I, slip op. at 1-2, 2017 WL 3588960 (Wash. Ct. App. Aug. 21, 2017) (unpublished) (footnote omitted), http://www.courts.wa.gov/opinions/pdf/754068.pdf.
¶ 3 The licensing supervisor for DEL sent a notice of disqualification to Fields. The notice informed Fields that she was permanently disqualified, effective immediately, "meaning that you cannot work with or have unsupervised access to child care children." Clerk's Papers at 49. Fields appealed to the Office of Administrative Hearings (OAH). Fields also requested reconsideration by the licensing supervisor, pointing to both factual inaccuracies in the notice of disqualification and evidence of her rehabilitation. It does not appear from the record that Fields's request for reconsideration has been considered on its merits.
¶ 4 On appeal, DEL moved for summary judgment on the sole basis that in accordance with former WAC 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(1) (2015), "the appellant must be disqualified from having unsupervised access to children or obtaining a [childcare] license under [former] WAC 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(1) [ (2015) ] due to her 1988 conviction of attempted second degree robbery." Id. at 140. Fields did not challenge the fact of her 1988 conviction but contended that the disqualification regulations violate her constitutional right to due process of law, both *1002facially and as applied. OAH determined that such questions were beyond the scope of its review and therefore granted summary judgment to DEL.
¶ 5 Fields petitioned for review in superior court, again arguing that the disqualification regulations violate her state and federal rights to procedural and substantive due process, both facially and as applied. DEL opposed Fields's arguments on the merits. The superior court dismissed the petition for review, determining that Fields had not met her burden of proving that the disqualification regulations are unconstitutional. The Court of Appeals affirmed in an unpublished opinion, and we granted Fields's petition for review. Fields v. Dep't of Early Learning , 189 Wash.2d 1031, 407 P.3d 1149 (2018).
ISSUE
¶ 6 Are DEL's permanent disqualification regulations unconstitutional, either facially or as applied to Fields?
ANALYSIS
¶ 7 Fields contends that she is entitled to relief because "[t]he order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied." RCW 34.05.570(3)(a). Specifically, she raises challenges based on the due process clauses of the state and federal constitutions, both facially and as applied.1 U.S. CONST . amend. XIV, § 1 ; WASH. CONST . art. I, § 3. We review the constitutionality of agency rules de novo, using the same standards that we use when reviewing the constitutionality of statutes. Amunrud v. Bd. of Appeals , 158 Wash.2d 208, 215, 143 P.3d 571 (2006). "Statutes are presumed to be constitutional, and the burden to show unconstitutionality is on the challenger." Id. The challenger can meet this burden only "if argument and research show that there is no reasonable doubt that the statute violates the constitution." Id.
¶ 8 We hold that DEL's regulations do violate federal procedural due process as applied to Fields.2 We therefore reverse the Court of Appeals.
A. Background information regarding DEL
¶ 9 At the time of Fields's permanent disqualification, DEL was an administrative agency within the executive branch that the legislature created in response to "a shortage of high quality services and supports for children ages birth to three and their parents and caregivers." Former RCW 43.215.005(2)(c) (2010). In general, "[t]he primary duties of the department [were] to implement state early learning policy and to coordinate, consolidate, and integrate child care and early learning programs in order to administer programs and funding as efficiently as possible." Former RCW 43.215.020(2) (2016).
¶ 10 Effective July 1, 2018, DEL became part of the newly created Department of Children, Youth, and Families (DCYF). LAWS OF 2017, 3d Spec. Sess., ch. 6. However, Fields's disqualification was effected by DEL, based solely on the DEL regulations then in effect. Given this procedural history, we decline to speculate on how a factually similar case would (or should) be handled by DCYF in the future.3
*1003¶ 11 The legislature specifically tasked DEL with administering a licensing program for childcare facilities. Former RCW 43.215.200(3) - (4) (2015). In order to receive and maintain a license to operate, childcare facilities were required to comply with applicable statutes and DEL regulations and were subject to regular inspections and mandatory reporting requirements. Operating an unlicensed childcare facility is a misdemeanor. Former RCW 43.215.340 (2006), recodified as RCW 43.216.365.
¶ 12 As part of the licensing program, DEL is required to run background checks on anyone who wants to work in a childcare facility in order to determine whether the "individual is of appropriate character, suitability, and competence to provide child care and early learning services to children." Former RCW 43.215.215(1) (2011). Pursuant to its rule making authority, DEL adopted administrative regulations for running these background checks.
¶ 13 DEL's regulations provide that "[a] subject individual who has a background containing any of the permanent convictions on the director's list, [former] WAC 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(1), will be permanently disqualified from providing licensed child care, caring for children or having unsupervised access to children in child care." Former WAC 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(1), recodified as WAC 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. This "director's list" includes 50 types of permanently disqualifying convictions, one of which is "[r]obbery." Former WAC 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, recodified as WAC 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. For purposes of the director's list, Fields's conviction for attempted second degree robbery is treated in the same manner as a completed offense and is therefore permanently disqualifying. Former WAC 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(1)(c) (2015), recodified as WAC 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.
¶ 14 A person with a permanently disqualifying conviction has no recourse at the administrative level. DEL regulations prohibit any administrative decision-maker from finding any regulation invalid or unenforceable and further prohibit reconsideration of permanent disqualifications on a case-by-case basis. WAC 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(1) ; former WAC 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(5) (2015), recodified as WAC 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.
B. Fields does properly raise a procedural due process challenge
¶ 15 The due process clause of the Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. CONST . amend. XIV, § 1. Fields's right to pursue the lawful career of her choice without arbitrary interference by the State is a well-established "liberty interest protected by the due process clause." Amunrud , 158 Wash.2d at 219, 143 P.3d 571. The right to due process has both procedural and substantive components. Id. at 216, 143 P.3d 571. DEL, however, contends that Fields's due process claim is substantive only, with no true procedural component. We disagree. While Fields does raise a substantive challenge, she also raises a procedural one.
¶ 16 "[P]rocedural due process requires that an individual receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation" of a protected interest. Id. To determine whether a particular procedure for providing notice and an opportunity to be heard is constitutionally adequate, we must assess the risk of erroneous deprivation in light of the competing interests at stake. Mathews v. Eldridge , 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). To do so, we must first recognize that there are different ways in which a deprivation might be "erroneous."
¶ 17 For instance, a deprivation might be "erroneous" based on a statutory or regulatory violation, where there is an error in applying the law as written to the facts presented. 2 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 14.6(a)(i), at 722 (5th ed. 2012). There is no question that Fields received sufficient procedures to guard against this type of error. The validity of her underlying conviction is unchallenged, and DEL's regulations, as written, require Fields's permanent disqualification on the sole basis of that conviction.
*1004¶ 18 Nevertheless, a deprivation based on a constitutional violation is no less "erroneous" than a deprivation based on a statutory or regulatory violation. A deprivation thus might be "erroneous" even though the law as written was correctly applied to the facts presented because the law, as applied, is unconstitutional. This is the type of error Fields asserts, claiming that her permanent disqualification based solely on a 30-year-old attempted second degree robbery conviction constitutes an arbitrary deprivation of her protected interest in pursuing lawful employment in her chosen field. Fields has a procedural due process right to have this claim heard " 'at a meaningful time and in a meaningful manner,' appropriate to the case." Amunrud , 158 Wash.2d at 216, 143 P.3d 571 (internal quotation marks omitted) (quoting Mathews , 424 U.S. at 333, 96 S.Ct. 893 ).
¶ 19 DEL's regulations prohibit any consideration of Fields's claim at the administrative level. Therefore, the only procedural mechanism available to her is judicial review pursuant to the Administrative Procedure Act (APA), chapter 34.05 RCW. To resolve Fields's as-applied procedural due process claim, we must determine whether APA review is sufficient to protect against an erroneous deprivation of Fields's protected interest in light of the specific circumstances presented.
C. In light of Fields's particular circumstances, she has a procedural due process right to an individualized determination at the administrative level
¶ 20 Fields claims that as applied to her, DEL's regulations forbidding a case-by-case determination of whether she is qualified to work in licensed childcare created an unacceptably high risk of erroneous deprivation in violation of her federal right to procedural due process. In the particular circumstances presented by Fields's case, we agree.
¶ 21 Our analysis of Fields's federal procedural due process claim is guided by the Mathews test, which requires us to consider the following:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
424 U.S. at 335, 96 S.Ct. 893. The parties do not dispute that Fields has a strong interest in pursuing her chosen profession without arbitrary interference by the State, while DEL has a strong interest in protecting children who are taught or cared for in licensed facilities without creating undue administrative burdens. It is the second Mathews factor that is primarily at issue: the risk of erroneous deprivation and the probable value of additional procedural safeguards.
¶ 22 In addressing this issue, we focus on the as-applied nature of Fields's challenge, which "is characterized by a party's allegation that application of the statute in the specific context of the party's actions or intended actions is unconstitutional." City of Redmond v. Moore , 151 Wash.2d 664, 669, 91 P.3d 875 (2004) (emphasis added). Furthermore, " '[d]ue process is flexible and calls for such procedural protections as the particular situation demands.' " Mathews , 424 U.S. at 334, 96 S.Ct. 893 (quoting Morrissey v. Brewer , 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ). We therefore must consider the risk of erroneous deprivation and the competing interests at stake in light of Fields's particular circumstances.
1. Fields faces an unusually high risk of erroneous deprivation
¶ 23 Fields has a protected interest, but not a fundamental right, to pursue her chosen, lawful occupation. Amunrud , 158 Wash.2d at 222, 143 P.3d 571. Therefore, if DEL's regulations prevent her from pursuing her chosen occupation without a rational basis for doing so, she has been erroneously deprived of a protected interest. Id. Here, a number of factors combine to put Fields at an unusually high risk of erroneous deprivation.
*1005¶ 24 First, Fields's conviction is over 30 years old, but DEL's regulations treat her identically to a person who has recently committed multiple acts of child abuse. DEL's regulations also give no weight to the fact that Fields was 22 years old at the time of her offense, while "psychological and neurological studies show[ ] that the 'parts of the brain involved in behavior control' continue to develop well into a person's 20s." State v. O'Dell , 183 Wash.2d 680, 691-92, 358 P.3d 359 (2015) (footnote omitted) (internal quotation marks omitted) (quoting Miller v. Alabama , 567 U.S. 460, 472, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) ). And at the time of her offense, Fields was "addicted to drugs, in domestic violence relationships, [and] in and out of homelessness." Report of Proceedings (RP) at 9. It is undisputed that Fields has overcome these challenges. Nevertheless, DEL's regulations make her 30-year-old conviction a permanent barrier to pursuing employment in her chosen field. Because Fields's sole disqualifying conviction occurred long ago under circumstances that no longer exist, it is highly likely that her permanent disqualification is erroneously arbitrary.
¶ 25 In addition to the passage of time in Fields's particular case, DEL's regulations are unusually "onerous" as compared to other laws relating to disqualification for unsupervised contact with children based on prior convictions. Br. of Amicus Curiae Civil Survival in Supp. of Pet. for Review at 5. For instance, the federal government requires the State to permanently disqualify individuals from licensed childcare work based on certain violent and sexual crimes. 42 U.S.C. § 9858f(c)(1)(D)-(E).4 "Robbery is not one of those crimes ." Fields , No. 75406-8-I, slip op. at 9 (emphasis added). This inconsistency between state and federal law increases the risk of an arbitrary, erroneous deprivation based solely on Fields's attempted second degree robbery conviction.
¶ 26 Washington law creates another inconsistency by providing that Fields's conviction would not permanently bar her from obtaining a license as a foster care provider. In contrast to the limited role played by licensed childcare facilities, "[f]oster parents are responsible for the protection, care, supervision, and nurturing of the child in placement." RCW 74.13.330. Yet Washington law provides that a conviction of robbery results in only a five-year disqualification from foster care license eligibility. DSHS Secretary's List of Crimes and Negative Actions for Use by Children's Administration (Mar. 2017), https://www.dshs.wa.gov/sites/default/files/CA/pub/documents/secretaryslist.pdf [https://perma.cc/SJ7P-HG8J]; see also former WAC 388-06A-0170(1)(a)-(e) (2015), recodified as WAC 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(1)(a)-(e). These inconsistent standards make it highly likely that a person convicted of attempted second degree robbery will be arbitrarily disqualified from working with children in licensed childcare even though the State would view that person as entirely fit to work with children as a foster parent.
¶ 27 Finally, the undisputed facts underlying Fields's 1988 conviction do not indicate that she was likely to pose a danger to children for the rest of her life. At the age of 22, Fields "tried to grab a woman's purse away from her in front of a Bartell[ ] Drugs." RP at 4. At the time, "[s]he was addicted to drugs, in domestic violence relationships, [and] in and out of homelessness." Id. at 9. There is no indication that any children were either victims of or witnesses to the attempted crime. And because Fields was not convicted of first degree robbery, we know that she was not armed with a deadly weapon, did not display anything that appeared to be a deadly weapon, and did not cause any bodily injury to the victim. Former RCW 9A.56.200(1) (1975). As the superior court judge in this case noted, Fields's actions "barely met perhaps the statutory elements of robbery in the second degree at the *1006time."5 RP at 26. Indeed, she was not even successful in grabbing the purse. DEL's regulations, however, treat Fields's inchoate attempt identically to a completed crime.
¶ 28 Without question, prior criminal convictions are relevant considerations when evaluating a person's future ability to care for vulnerable populations such as children. However, Fields's conviction is based on an offense that was committed 30 years ago, when she was under 25 years old. Her attempted second degree robbery conviction does not permanently disqualify her from licensed childcare work as a matter of federal law and does not even permanently disqualify her from being a licensed foster care provider as a matter of state law. The offense itself did not involve any children in any way, did not involve any deadly weapons, and did not inflict any bodily injury. In light of these circumstances, and keeping in mind that DEL's designated task is to determine whether the individual is of appropriate character, suitability, and competence to provide childcare under former RCW 43.215.215(1), it is difficult to see how the fact of the single conviction at issue here should permanently disqualify Fields as unfit to work in a licensed childcare facility.
¶ 29 This is not to say that Fields is necessarily qualified for such work. The notice of disqualification sent by DEL's licensing supervisor raised a number of concerns that, taken together, may still lead to Fields's disqualification. However, using Fields's 1988 attempted second degree robbery conviction as the sole basis for her permanent disqualification with no opportunity for an individualized determination presents an unusually high risk of arbitrary, erroneous deprivation. In light of this unusually high risk, the additional procedure of an individualized determination at the administrative level would be extremely valuable.
2. An individualized administrative determination of Fields's qualifications is invaluable to mitigating the risk of erroneous deprivation
¶ 30 As noted above, DEL regulations explicitly prohibit any individualized consideration of the qualifications of a person with a permanently disqualifying conviction. WAC 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(1) ; former WAC 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(5). Fields's only recourse was therefore to seek judicial review of her disqualification pursuant to the APA. In these particular circumstances, APA review does not provide sufficient procedural protections given the high risk of erroneous deprivation.
¶ 31 To obtain judicial review, Fields was required to comply with the APA's strict requirements for filing and serving her petition. RCW 34.05.542. To prevail on the merits, she faced the extraordinarily high burden of showing beyond a reasonable doubt that DEL's regulations were unconstitutional. Amunrud , 158 Wash.2d at 215, 143 P.3d 571. The only relief Fields has ever asked for is an individualized determination of her qualifications at the administrative level. She has been challenging her disqualification in court since October 2015, going through three levels of judicial review, unable to work (much less advance) in her chosen field the entire time. The added time and expense involved in the judicial review process, in addition to the difficulty in obtaining relief, raises significant concerns about its adequacy in light of the high risk of erroneous deprivation presented here. Mathews , 424 U.S. at 341-42, 96 S.Ct. 893 ; see dissent at 1012-13.
¶ 32 Meanwhile, an individualized determination would drastically reduce the risk of erroneous deprivation in Fields's case. Properly and fairly conducted, an individualized determination will ensure that even if Fields is ultimately disqualified, it will not be arbitrary but, instead, based on her "character, suitability, and competence to provide child care and early learning services to children." Former RCW 43.215.215(1).
¶ 33 We recognize DEL's interests, but they are not compromised by this as-applied challenge. DEL's primary interest, protecting children, is not implicated at all. Whether Fields is qualified to work in licensed childcare *1007facilities will still be decided with the paramount goal of protecting children. The procedure on remand need not be unusual or burdensome. DEL already has regulations governing individual determinations of those with troubling past behavior but without any disqualifying convictions. See former WAC 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(4), (7) ; former WAC 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(1) (2015), recodified as WAC 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 ; former WAC 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 (2015), recodified as WAC 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 ; former WAC 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(1)-(4). Fields is entitled only to be heard in accordance with existing procedures, where her attempted second degree robbery conviction is considered along with the rest of her history, both favorable and unfavorable. If there is a nonarbitrary basis to believe that Fields's qualification would present a danger to childcare children, she will remain disqualified, fully protecting DEL's primary interest in protecting children.
¶ 34 DEL also has a legitimate interest in easing the administrative burdens that would come with requiring a case-by-case evaluation of every person who seeks qualification to work in licensed childcare facilities. Weinberger v. Salfi , 422 U.S. 749, 784, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). However, that interest is extremely minimal given the as-applied nature of this challenge. We do not hold that every person with a permanently disqualifying conviction must be given an individualized administrative hearing. We hold only that in light of the unusually high risk of erroneous deprivation in Fields's particular case, the additional protection of an individualized determination of her qualifications is required as a matter of procedural due process.6
CONCLUSION
¶ 35 We do not question the authority of administrative agencies to set generally applicable regulations governing the qualifications of people who work with vulnerable populations such as children. But that authority cannot preclude the possibility that the regulations may nevertheless be unconstitutional as applied to a particular case. As applied to this case, DEL's regulations created an intolerably high risk of erroneously depriving Fields of her protected interest in pursuing her chosen, lawful occupation. Addressing Fields's qualifications on an individualized basis at the administrative level is invaluable to reducing that risk, and in this as-applied challenge, the value of such a procedure is not outweighed by any countervailing government interest. We therefore reverse the Court of Appeals and remand for further administrative proceedings, at which Fields's entire history and the totality of her circumstances must be considered on an individualized basis.
WE CONCUR:
Madsen, J.
Stephens, J.
González, J.

Amici also raise the state equal protection clause and equal rights amendment. Wash. Const . art. I, § 12, art. XXXI. We decline to address these arguments because they are briefed only by amici and are unnecessary to the just resolution of this case.

We decline to address Fields's state constitutional arguments because the briefing on those arguments is insufficient "to insure that ... our decision will be made for well founded legal reasons." State v. Gunwall , 106 Wash.2d 54, 62-63, 720 P.2d 808 (1986). We also decline to address her federal substantive and facial due process arguments because they are unnecessary to the resolution of this case.

For the first time at oral argument, DEL contended that if Fields were to obtain a certificate of restoration of opportunity (CROP) pursuant to chapter 9.97 RCW, she would be entitled to an individualized determination by DCYF, making a decision on her constitutional arguments unnecessary. Wash. Supreme Court oral argument, Fields v. Dep't of Early Learning , No. 95024-5 (May 8, 2018), at 31 min., 48 sec., audio recording by TVW, Washington State's Public Affairs Network, http://www.tvw.org. After reviewing supplemental briefing from the parties on this issue, we decline to address its merits. Neither DCYF nor the CROP statute existed when Fields was permanently disqualified, and any effect a CROP might have on Fields's situation in the future is entirely hypothetical at this time.

The federal statute requires permanent disqualification of anyone who has been convicted of the following felony offenses: "murder," "child abuse or neglect," "a crime against children, including child pornography," "spousal abuse," "a crime involving rape or sexual assault," "kidnapping," "arson," and "physical assault or battery." 42 U.S.C. § 9858f(c)(1)(D)(i)-(viii). It also requires permanent disqualification if the person "has been convicted of a violent misdemeanor committed as an adult against a child, including the following crimes: child abuse, child endangerment, sexual assault, or of a misdemeanor involving child pornography." 42 U.S.C. § 9858f(c)(1)(E).

To the extent that there are other factual circumstances underlying Fields's conviction that are not in the record before us, such facts may be considered when Fields is provided with an individualized determination of her qualifications.

We respectfully disagree with the dissent's suggestion that we should uphold DEL's procedural regulations as applied to Fields to avoid the added burdens that will result from others seeking relief pursuant to our decision today. See dissent at 1012-13. To the extent that DEL's procedures create a high likelihood of producing arbitrary results in other cases, these added burdens are constitutionally required.