IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of | No. 81523-7-I |
| L.H. | DIVISION ONE |
| | PUBLISHED OPINION |

CHUN, J. — This case concerns a 90-day commitment hearing under the "Involuntary Treatment Act" (ITA), ch. 71.05 RCW. While testifying, a mental health professional read aloud medical chart notes written by other mental health professionals about L.H.'s behavior during his 14-day involuntary treatment. L.H. objected, claiming a due process right to confront and cross-examine the authors of the notes. The trial court overruled the objection. And then, relying in part on this testimony, it committed L.H. for 90 days. We affirm.

## I. BACKGROUND

The trial court entered a 14-day commitment order under the ITA placing L.H. into inpatient treatment at Cascade Behavioral Health Hospital. Cascade then petitioned to commit L.H. for 90 more days.[1]

---

[1] At the expiration of the fourteen-day period of intensive treatment, a person may be committed for further treatment pursuant to RCW 71.05.320 if:

. . .

(2) Such person was taken into custody as a result of conduct in which he or she attempted or inflicted physical harm upon the person of another or himself or herself, or substantial damage upon the property of

During the 90-day commitment hearing, the State introduced testimony by Jon Bibler, a crisis intervention specialist, who testified about L.H.'s threatening behavior before commitment; Hyemin Song, a records custodian at Auburn MultiCare, who testified about L.H.'s condition upon admission; and Claire Coetzer, a clinical social worker at Cascade, who testified about L.H.'s condition at Cascade during the 14-day treatment.

Coetzer testified that she diagnosed L.H. with schizoaffective disorder. And she concluded that L.H. presented a substantial risk of physical harm to others as evidenced by behavior that has caused harm or placed another in reasonable fear of such harm.

Coetzer then said she would read aloud notes from L.H.'s medical chart written by other mental health professionals during his 14-day treatment. L.H.'s counsel stipulated that the notes qualified as business records for purposes of the hearsay exception.

Coetzer read a note by a licensed practitioner nurse, which says that L.H. yelled, cursed, acted sexually, threatened others, and postured. The same note says staff and peers were afraid of him. L.H.'s counsel objected, saying that L.H. had a due process right to confront the author of the note if the State intended to use it as proof of an element of the State's case. The trial court asked the State

others, and continues to present, as a result of a behavioral health disorder, a likelihood of serious harm.

RCW 71.05.280. "'Likelihood of serious harm' means: . . . A substantial risk that: . . . physical harm will be inflicted by a person upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm." RCW 71.05.020(35)(a)(ii).

if it was offering the note to prove an element of its case; the State declined to answer definitively but said that the notes "confirm the assertion about the likelihood of harm." The court decided to admit the testimony about the note and reserved ruling on whether it could consider the testimony in its commitment decision. L.H.'s counsel clarified that he was not making a Sixth Amendment[2] confrontation clause argument, but a Fourteenth Amendment[3] due process argument.

Coetzer resumed reading from the chart note, which describes additional physically aggressive behavior by L.H. His counsel objected again on the same grounds and the trial court admitted testimony about the note subject to a later ruling on the due process issue. The trial court asked L.H.'s counsel for case law on the issue, and he responded that there was no case law about the due process right to confrontation in an ITA hearing.

Coetzer continued reading from multiple chart notes by different authors, which reflected similar behavior by L.H. His counsel continued to object on due process grounds and the trial court allowed the testimony to continue subject to a ruling on due process.

On cross-examination, Coetzer said that L.H.'s medical chart notes were all written by Cascade employees and that Cascade was in the same building as the courtroom where the ITA hearing was taking place.

---

[2] U.S. CONST. amend. VI.
[3] U.S. CONST. amend. XIV.

After the hearing adjourned for the day, L.H.'s counsel submitted briefing on whether the due process clause guaranteed a confrontation right. The next day, the trial court addressed the due process objection. It applied the Mathews[4] factors and concluded that two of the three factors favored the State and thus overruled the objection. The trial court said the first factor weighed in L.H.'s favor because of his liberty interest. It determined the second factor—about existing procedural safeguards—weighed in the State's favor. It said that ITA hearings come with "pretty significant protections akin" to sexually violent predator (SVP) commitment hearings—including the right to an attorney, cross-examination of testifying witnesses, examination of evidence, and a high civil standard of clear, cogent, and convincing evidence. It also determined that the third factor—about the State's interest—weighed in the State's favor because the State has an interest in ensuring that people who have a mental illness do not harm themselves or others and get treatment. The court noted that, if ITA hearings required every author of a medical chart note to testify, such a requirement would detract from their primary task of caring for patients.

In ordering L.H. to 90 days of involuntary inpatient treatment, the trial court concluded that L.H. was "taken into custody as a result of conduct in which he . . . attempted or inflicted physical harm on the person of another or himself[], or substantial damage on the property of others, and continues to present a likelihood of serious harm as a result of a mental disorder." The trial court based its conclusion in part on Bibler's testimony about L.H.'s actions before he was

---

[4] Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

4

committed for 14 days and in part on the evidence of L.H.'s behavior in treatment—specifically from the medical chart notes. L.H. appeals.

## II. ANALYSIS

L.H. says that the trial court erred by considering Coetzer's testimony about the chart notes because due process[5] guarantees him the right to confront the notes' authors through cross-examination.[6] He claims the three Mathews balancing test factors weigh in his favor. We disagree.

We review de novo constitutional challenges based on Mathews, deferring to the trial court's factual findings "where appropriate." In re Dependency of E.H., 191 Wn.2d 872, 894–95, 427 P.3d 587 (2018).

The due process clause of the Fourteenth Amendment "promises both substantive and procedural due process before the State may lawfully take a person's life, liberty, or property." In re Welfare of M.B., 195 Wn.2d 859, 867, 467 P.3d 969 (2020). "Procedural due process requires the government to meet certain constitutional minimum standards before it may lawfully make decisions that affect an individual's liberty interests." Id. "Substantive due process, on the other hand, limits the rules that the government may adopt governing these deprivations." Fields v. Dep't of Early Learning, 193 Wn.2d 36, 58, 434 P.3d 999 (2019). Our Supreme Court has treated whether a person has a right to

---

[5] L.H. makes a due process claim under the Fourteenth Amendment.

[6] L.H. says even though his 90-day commitment has ended, this appeal is not moot. See In re Det. of M.K., 168 Wn. App. 621, 625, 279 P.3d 897 (2012) (determining that an appeal of a 90-day commitment is not moot "[b]ecause an involuntary commitment order may have adverse consequences on future involuntary commitment determinations"). The State does not dispute this.

confrontation as a procedural due process issue and applied the Mathews balancing test to the question. In re Det. of Stout, 159 Wn.2d 357, 370, 150 P.3d 86 (2007).

> In determining what procedural due process requires in a given context, we employ the Mathews test, which balances: (1) the private interest affected, (2) the risk of erroneous deprivation of that interest through existing procedures and the probable value, if any, of additional procedural safeguards, and (3) the governmental interest, including costs and administrative burdens of additional procedures.

Id. Procedural due process is flexible. Id. "At its core is a right to be meaningfully heard, but its minimum requirements depend on what is fair in a particular context." Id. We assess procedural due process challenges case-by-case. State Constr., Inc. v. City of Sammamish, 11 Wn. App. 2d 892, 913, 457 P.3d 1194, review denied 195 Wn.2d 1028, 466 P.3d 770 (2020). "A person claiming a due process violation has the burden of proof." State v. Conway, 8 Wn. App. 2d 538, 553, 438 P.3d 1235, review denied, 194 Wn.2d 1010, 452 P.3d 1240 (2019).

   A. The private interest affected

The parties agree that L.H. has a significant interest in his physical liberty for the 90-day period and that this factor weighs in his favor. See In re Det. of Thorell, 149 Wn.2d 724, 731, 72 P.3d 708 (2003) ("Freedom from bodily restraint has always been at the core of the liberty interest protected by the due process clause of the fourteenth amendment. . . . Commitment for any reason constitutes a significant deprivation of liberty triggering due process protection."). We agree as well.

6

B. The risk of erroneous deprivation of liberty given current procedural safeguards and the probable value of added safeguards

L.H. says that the process guaranteed to him during an ITA 90-day commitment hearing does not sufficiently guard against the risk of erroneous deprivation of his liberty interest. We disagree.

In Stout, in an analogous context, our Supreme Court addressed whether a respondent in a SVP trial has a due process right to confront a witness. 159 Wn.2d at 370. At Stout's SVP trial, the State presented testimony from an alleged victim in the form of two telephonic depositions. Id. at 368. The second deposition came with a video recording of the alleged victim answering questions. Id. Stout contended that the use of the telephonic depositions rather than live testimony violated his due process right to confrontation. Id. at 368–69. In determining that the second Mathews factor weighed in the State's favor, the court recognized these safeguards in SVP proceedings: the right to counsel (including appointed counsel), the right to present evidence on a detainee's own behalf, the right to cross-examine adverse witnesses who testify against the detainee, the right to view and copy reports and petitions, and the right to a jury. Id. at 370. The court said, "Most importantly, at trial the State carries the burden of proof beyond a reasonable doubt, and in a jury trial, the verdict as to whether a detainee is a sexually violent predator must be unanimous." Id. at 370–71. The court also said that a right to confrontation would add little value to the existing procedural safeguards because the goals of confrontation had been met by the deposition. Id. at 371. The court noted that the depositions were under oath, subject to Stout's review and potential impeachment, and the second deposition

7

was videotaped, allowing the fact finder to observe the alleged victim's demeanor during questioning. Id.[7]

Like SVP proceedings, ITA proceedings are civil. Stout, 159 Wn.2d at 368–69 (SVP); In re Det. of W.C.C., 185 Wn.2d 260, 261, 370 P.3d 1289 (2016) (ITA). And similarly, respondents in ITA hearings have significant procedural protections. They have the right to an attorney (including appointed counsel), the right to present evidence on their own behalf, the right to cross-examine witnesses who testify against them, the right to view and copy petitions and reports, and the right to a jury.[8] RCW 71.05.217(5);[9] RCW 71.05.310. Also, the

---

[7] In In re Detention of Coe, our Supreme Court addressed a similar issue. 175 Wn.2d 482, 509, 286 P.3d 29 (2012). In an SVP trial, Coe challenged the admission of reports by alleged victims of uncharged assaults. Id. at 509. A psychologist testified that Coe was an SVP and said that she relied on the reports in reaching that determination. Id. Coe claimed that this violated his due process right to confront and cross-examine the alleged victims and that his case was distinguishable from Stout because he had no chance to cross-examine, ensure veracity by oath, or observe demeanor. Id. at 510. The court rejected this distinction and held that the second Mathews factor weighed in the State's favor given the other existing safeguards discussed in Stout. Id. at 511. In reaching its holding, the court emphasized that the assault reports were admitted only to show the basis of the psychologist's opinion, and not admitted substantively. Id.

[8] Because of the COVID-19 pandemic, L.H. could not have a jury trial. In March 2020, the Supreme Court of Washington suspended all civil jury trials because of the COVID-19 pandemic. Am. Order No. 25700-B-607, In re Statewide Response by Washington State Courts to the Covid-19 Public Health Emergency (Wash. Mar. 20, 2020), http://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders /Supreme%20Court%20Emergency%20Order%20re%20CV19%20031820.pdf [https://perma.cc/NY2J-S4XC]. L.H.'s hearing occurred during this suspension.

[9] For convenience, we cite the current version of the relevant statutes. Former RCW 71.05.310 (2005), referencing the rights set forth in former RCW 71.05.360 (2019), was in effect at the time of L.H.'s hearing. LAWS of 2012, ch. 256 § 8 (effective May 1, 2012). Laws of 2020, ch. 302, § 104 (effective June 11, 2020) repealed former RCW 71.05.360. The current version of RCW 71.05.217(5)(a) recodifies statutory rights during an ITA hearing.

Rules of Evidence apply to ITA hearings.[10]  RCW 71.05.217(5).  And to petition for 90-day involuntary treatment, a petitioner must support their petition with affidavits by mental or physical health professionals.  RCW 71.05.290.

L.H. highlights that the burden of proof in SVP trials differs from the burden in ITA hearings.  See Stout, 159 Wn.2d at 370–71 (SVP hearings require proof beyond a reasonable doubt); RCW 71.05.310 (ITA 90-day commitment hearings require proof by clear, cogent, and convincing evidence).  While this is true, as with SVP trials, 90-day commitment hearings require a heightened burden of proof.  See In re Custody of ALD, 191 Wn. App. 474, 501, 363 P.3d 604 (2015) (noting that the "more rigorous" standard of clear, cogent, and convincing evidence applies to nonparental custody hearings "[b]ecause of the severe consequences of an erroneous deprivation of a parent's custody rights").

L.H. also emphasizes the lack of a unanimous jury trial requirement in 90-day hearings.  But 90-day hearings still provide an option for a jury trial and still require agreement by 10 out of 12 jurors or 5 out of 6 jurors.  In re Det. of McLaughlin, 100 Wn.2d 832, 845, 676 P.2d 444 (1984).

On balance, the comprehensive set of procedural safeguards listed above minimize the risk of a trial court erroneously depriving an ITA respondent of their liberty interest.  Also, in light of these safeguards, the additional safeguards of confrontation and cross-examination would add little probable value to L.H.'s ITA hearing.  Again, L.H. bears the burden of establishing a due process violation.

---

[10] Again, L.H. stipulated to the admissibility of the evidence at issue.  Thus, he essentially claims the court violated his due process right by considering admissible evidence.

He does not claim that he was somehow barred from interviewing the authors of the notes or calling them as witnesses in his case.

C. The State's interest, including the burden of additional procedure

As for the third Mathews factor, the State says that it has strong interests (1) in treating those who have a mental impairment and pose a risk of harm to themselves or others, and (2) reducing administrative burdens. We agree.

The State has an interest in treating individuals with mental illness when they pose a risk of harm to themselves or others. See In re Det. of M.W. v. Dep't of Soc. & Health Servs., 185 Wn.2d 633, 660, 374 P.3d 1123 (2016) ("the government has important interests in increasing public safety [and] encouraging effective treatment of violent mentally ill individuals"). L.H. acknowledges this interest.

Also, the State has an interest in reducing administrative burdens and costs. See Stout, 159 Wn.2d at 371–72 (noting the State's interest in "streamlining" SVP trials, reducing undue burdens, and ensuring the accessibility of testimony from unavailable or out-of-state witnesses); Coe, 175 Wn.2d at 511–12 (also discussing the State's interest in streamlining commitment proceedings and avoiding heavy financial burdens accompanying live testimony). To be sure, requiring the author of every relevant medical chart note to testify at a 90-day ITA commitment hearing would pose a significant burden on the State. L.H. says that the Mathews analysis is case-by-case and highlights that the authors of the notes at issue work in the same building as the courtroom. While this proximity may

have reduced the burden, having more witnesses testify necessarily imposes some level of administrative burdens or costs.

We conclude that, on balance, the Mathews test supports the State in this matter. Existing procedural safeguards sufficiently protected L.H.'s liberty interests; and the State has significant interests in treating mental illness and reducing administrative burdens.[11]

We affirm.

_____
Chun, J.

WE CONCUR:

_____        _____

---

[11] We also reject L.H.'s alternative argument based on Vitek v. Jones, 445 U.S. 480, 495–96, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980) (saying that the right to confront and cross-examine witnesses, absent good cause, applies to a hearing to decide whether to transfer a prisoner to a mental health hospital). The Vitek holding is not as broad as L.H. contends—it does not provide that the confrontation right applies in all civil commitment hearings; the case involves a hearing to decide whether to transfer a prisoner to a mental health hospital; and the Court did not conduct a Mathews analysis. Id. at 494–96.