# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON,

Respondent,

v.

SALLYEA O. McCLINTON,

Appellant.

No. 78076-0-I

DIVISION ONE

PUBLISHED OPINION

FILED: August 26, 2019

APPELWICK, C.J. — In 1997, McClinton was convicted of first degree rape while armed with a deadly weapon, attempted first degree rape, and first degree burglary. In November 2017, the trial court issued a bench warrant for McClinton based on his alleged violations of community custody conditions. Before the hearing on his alleged violations, he moved to transfer his case to the Department of Corrections. The trial court denied his motion, found him in violation of three community custody conditions, and ordered him to serve 30 days of confinement. McClinton argues that he was denied equal protection because he did not receive the same procedural benefits as offenders who committed their underlying crime after July 1, 2000. We affirm.

## FACTS

In 1997, Sallyea McClinton was convicted of first degree rape while armed with a deadly weapon, attempted first degree rape, and first degree burglary. The trial court sentenced him to a total of 202 months of confinement. It also sentenced

him to community placement for two years or up to the period of earned release, whichever was longer.

In 2013, McClinton was released from prison and began a term of community custody. State v. McClinton, No. 76001-7-I, slip. op. at 1 (Wash. Ct. App. Mar. 5, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/760017 .PDF. Since that time, he has repeatedly violated his community custody conditions. Most recently, in November 2017, the trial court issued a bench warrant for McClinton based on three alleged violations. He was arrested on January 1, 2018.

After his arrest, McClinton filed a motion to transfer the hearing on his alleged violations to the Department of Corrections (DOC), or, alternatively, to "limit the court's authority to the same authority as granted to the [DOC] to conduct hearings and impose sanctions pursuant to RCW 9.94A.737." He argued that equal protection requires that he "be provided the same procedural protections and sanctions regime as applied to offenders whose crimes were committed after July 1, 2000."

On January 24, 2018, the trial court held a hearing on McClinton's alleged violations. The court denied his motion to transfer the hearing, found him in violation of 3 community custody conditions, and ordered him to serve 30 days of confinement. McClinton appeals.

## DISCUSSION

McClinton argues that he was denied equal protection because he was not afforded the same procedural benefits as offenders who committed their

underlying crime on or after July 1, 2000. He asserts that those offenders are sanctioned through the DOC process, are entitled to a hearing within 5 days of being held in confinement, and cannot be sentenced to more than 30 days of confinement per hearing. In contrast, he points out that the court has sanction authority over offenders who committed their underlying crime before July 1, 2000. He contends that, if the court has sanction authority, "there is no set time within which [an offender] has a right to a hearing," and an offender "could be subject up to 60 days in jail for each violation."

The State argues that this court should decline to review McClinton's equal protection claim because it is moot. McClinton concedes that his claim is moot, but asks this court to reach the merits "because the case involves an issue of substantial public interest that is likely to reoccur."

I.  Mootness

A case is moot when we can no longer provide an appellant effective relief. In re Det. of LaBelle, 107 Wn.2d 196, 200, 728 P.2d 138 (1986). This case is technically moot, because McClinton's confinement has ended. In re Det. of Swanson, 115 Wn.2d 21, 24, 804 P.2d 1 (1990). As a general rule, an appellate court will not review a moot case. In re Det. of H.N., 188 Wn. App. 744, 749, 355 P.3d 294 (2015). But, an appellate court may decide a moot case if it involves an issue of substantial public interest. State v. Hunley, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). In deciding to review a moot issue, this court must consider (1) the public or private nature of the issue, (2) the desirability of an authoritative

determination that will provide future guidance to public officers, and (3) the likelihood that the issue will recur. Id.

The constitutionality of statutes relating to criminal sentencing presents an issue of public interest. See id. at 908. And, while this court can no longer provide McClinton effective relief, the issue will likely recur with other offenders who committed their underlying crime before July 1, 2000 and violate their sentence conditions. Public officers would therefore benefit from an authoritative determination on the question. Thus, we reach the merits of this case.

## II. Equal Protection

McClinton argues that he was denied equal protection when he was denied the benefits of a DOC sanctions process.[1] He explains that, under RCW 9.94A.6332(7), "statutory sanctioning authority is vested in [the] DOC for those who committed their offense after July 1, 2000." But, under RCW 9.94B.010(1) and 9.94B.040(1), a court has authority to impose sanctions on an offender who committed their underlying crime before July 1, 2000. He contends that he is similarly situated to offenders who are sanctioned by the DOC, and, as a result, should receive the same benefits as those offenders. He also argues that the purposes of the statute vesting sanctioning authority in the DOC would have been

---

[1] In his brief, McClinton does not specifically identify which statute violates equal protection. Nor does he explicitly argue that the statute affording the benefits of a DOC sanctions process should be applied retroactively to him. Rather, he summarizes the different statutory schemes governing sanctions for offenders who committed their underlying crime before July 1, 2000, and offenders who committed their underlying crime on or after that date. In doing so, he argues that there is no rational basis for denying him the benefits of a DOC process based on the date of his offense.

4

served by having the statutory change apply to him and others like him sentenced before July 1, 2000. He identifies those purposes as "expedit[ing] the sanctions process by preventing court backlog and [making] the sanctions process less confusing by having [the] DOC take on this function."

A. Standard of Review

The Washington Constitution article I, section 12, and the Fourteenth Amendment to the United States Constitution ensure that persons similarly situated as to the legitimate purposes of a law receive equal treatment. State v. Manussier, 129 Wn.2d 652, 672, 921 P.2d 473 (1996). Washington courts construe the federal and state equal protection clauses identically. Id. This court reviews constitutional challenges de novo. State v. Budd, 185 Wn.2d 566, 571, 374 P.3d 137 (2016).

Strict scrutiny applies when the statutory classification at issue involves a suspect class, or threatens a fundamental right. Manussier, 129 Wn.2d at 672-73. Intermediate scrutiny applies when important rights or semisuspect classifications are affected. Id. at 673. The most relaxed level of scrutiny, rational basis, applies when a statutory classification does not involve a suspect or semisuspect class and does not threaten a fundamental right. Id. McClinton concedes that persons sanctioned under RCW 9.94B.040(1) are not a suspect or semisuspect class. He also concedes that there is no fundamental right at issue. Thus, he concedes that rational basis review applies.

Under rational basis review, the challenged law must reflect a legitimate state objective, and the law must not be wholly irrelevant to achieving that

objective. Manussier, 129 Wn.2d at 673. The party challenging the classification has the burden of showing that it is purely arbitrary. State v. Coria, 120 Wn.2d 156, 172, 839 P.2d 890 (1992). Rational basis requires only that the means employed by the statute be rationally related to a legitimate state goal; not that the means of the challenged statute be the best way of achieving that goal. Manussier, 129 Wn.2d at 673.

B. Sanctions Procedure

The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, provides that the law in effect at the time a crime was committed governs sentencing. RCW 9.94A.345. If an offender who committed an underlying crime before July 1, 2000 violates a condition or requirement of their sentence, "the court may modify its order of judgment and sentence and impose further punishment." RCW 9.94B.010; RCW 9.94B.040(1). The court may sanction the offender with up to 60 days of confinement for each violation. RCW 9.94A.633(1)(a).

In contrast, if an offender who committed an underlying crime on or after July 1, 2000 is being supervised by the DOC and violates a sentence condition, "any sanctions shall be imposed by [the DOC] pursuant to RCW 9.94A.737."[2]

---

[2] However, if the offender was sentenced under the drug offender sentencing alternative, the special sex offender sentencing alternative, or the parenting sentencing alternative, any sanctions shall be imposed by the court under RCW 9.94A.660, 9.94A.670, or 9.94A.655, respectively. RCW 9.94A.6332(1)-(3). If an offender is being supervised by the DOC under RCW 9.92.060, 9.95.204, or 9.95.210, "upon receipt of a violation hearing report from [the DOC], the court retains any authority that those statutes provide to respond to a probationer's violation of conditions." RCW 9.94A.6332(7). And, if an offender is not being supervised by the DOC and violates a sentence condition, "any sanctions shall be imposed by the court pursuant to RCW 9.94A.6333." RCW 9.94A.6332(8).

6

RCW 9.94A.6332(7); see State v. Bigsby, 189 Wn.2d 210, 221, 399 P.3d 540 (2017) (RCW 9.94B.040, which allows a court to modify an order of judgment and sentence, applies only to crimes committed prior to July 1, 2000). If the offender is in total confinement before a hearing on the alleged violation, the DOC must hold a hearing within 5 business days, but not less than 24 hours, after written notice of the alleged violation. RCW 9.94A.737(6)(b). If the offender is not in total confinement, the DOC must hold the hearing within 15 business days, but not less than 24 hours, after written notice of the alleged violation. RCW 9.94A.737(6)(b). The maximum sanction the DOC may impose for a "high level violation" is 30 days of confinement per hearing. RCW 9.94A.737(4).

The State Supreme Court explained these changes to the sanctions procedure in Bigsby. Before July 1, 2000, the authority of the courts and the DOC to sanction an offender for violating a sentence condition depended on whether that offender was released on community custody or postrelease supervision. Bigsby, 189 Wn.2d at 217. The DOC could sanction offenders released on community custody. Id. But, offenders who had completed their confinement and were released on postrelease supervision were entitled to a court hearing if they were accused of violating their sentences. Id. at 217-18. Therefore, the DOC had to track an offender's community custody or postrelease supervision status "to determine whether it had statutory authorization to sanction the offender for violating his or her sentence conditions." Id. at 218.

The governor at the time was concerned that splitting supervisory authority between the courts and the DOC "hamstrung the [DOC]'s ability to protect the

7

community and resulted in many offenders escaping punishment because of the significant backlog in the courts." Id. As a result, the legislature enacted the Offender Accountability Act (OAA),[3] which "consolidated postrelease supervision into one term of community custody for offenses committed on or after July 1, 2000." Id. While this change alleviated some of the DOC's concerns, it caused confusion for judges, lawyers, offenders, and the DOC. Id. at 218-19. Despite abolishing postrelease supervision for crimes committed on or after July 1, 2000, the legislature kept the statutory provisions for postrelease supervision in place. Id. at 219.

To resolve this confusion, in 2008, the legislature revised the community custody provisions. Id. It enacted new provisions "'intended to simplify the supervision provisions of the [SRA] and increase the uniformity of its application.'" Id. It also "converted all outstanding postrelease supervision terms into community custody terms." Id. But, the legislature was concerned that this conversion might be unconstitutional. Id. As a result, it moved certain statutes relating to pre-OAA sentences, including RCW 9.94B.040, to another chapter that may be applicable to sentences for crimes committed before July 1, 2000. Id. The legislature reaffirmed its intent that the provisions in statutes like RCW 9.94B.040 be a supplement to the SRA. Id.

C. Rational Basis

Under the rational basis test, this court must determine whether (1) the legislation applies alike to all members within the designated class, (2) there are

---

[3] RCW 72.09.580, .590, .904.

8

reasonable grounds to distinguish between those within and those without that class, and (3) the classification has a rational relationship to the proper purpose of the legislation. DeYoung v. Providence Med. Ctr., 136 Wn.2d 136, 144, 960 P.2d 919 (1998). To succeed with an equal protection challenge, McClinton must first establish that he is similarly situated with other persons in a class who have received different treatment under the same law. State v. Osman, 157 Wn.2d 474, 484, 139 P.3d 334 (2006).

McClinton argues that the relevant class here consists of defendants (1) who are under DOC supervision, (2) who were not sentenced to special sentencing alternatives or conditions, and (3) against whom the State seeks to apply sanctions for sentencing violations. But, by enacting the OAA and keeping in place the statutes relating to pre-OAA sentencing, the legislature differentiated between two categories of offenders based on the date of their crime. Different laws apply to offenders who committed their underlying crime before July 1, 2000, and offenders who committed their underlying crime on or after that date. Accordingly, McClinton is not similarly situated to offenders who committed their underlying crime on or after July 1, 2000.

Essentially, McClinton argues that the legislature did not have a rational basis for creating two classes of offenders based on the date of their crime. He asserts that the State Supreme Court "identified that the purpose of vesting [the] DOC with sanctioning authority as provided under [RCW] 9.94A.6332 was to expedite the sanctions process by preventing court backlog," and "make the sanctions process less confusing by having [the] DOC take on this function." He

contends that sending McClinton through the DOC process would have served both of these goals.

In <u>Addleman</u>, the State Supreme Court noted that "[t]he legislature has the power to shape the sentencing scheme without denying equal protection." <u>In re Pers. Restraint of Addleman</u>, 151 Wn.2d 769, 774, 92 P.3d 221 (2004). There, Addleman had been sentenced under Washington's former indeterminate sentencing system. <u>Id.</u> at 772 & n.1. Under that system, the trial court determined a defendant's maximum sentence, while the minimum sentence was generally set by the Board of Prison Terms and Paroles. <u>Id.</u> Washington abandoned that system when the legislature enacted the SRA. <u>Id.</u> at 772 n.1. The former system applied to a decreasing number of offenders, including Addleman, whose offenses predated the SRA's implementation. <u>Id.</u> In rejecting his equal protection claim and finding that it "ha[d] been settled," the court relied on <u>Foster v. Wash. State Bd. of Prison Terms and Parole</u>, 878 F.2d 1233 (9th Cir. 1989). <u>Addleman</u>, 151 Wn.2d at 774.

<u>Foster</u> also involved an offender who committed his underlying crimes before the SRA's implementation. 878 F.2d at 1234. In addressing Foster's equal protection argument, the Ninth Circuit held, "There is no denial of equal protection in having persons sentenced under one system for crimes committed before July 1, 1984 and another class of prisoners sentenced under a different system." <u>Id.</u> at 1235. It explained that "[i]mprovement in sentencing is [a] rational government purpose." <u>Id.</u>

The State Supreme Court is clear that the legislature can shape the sentencing scheme without denying equal protection. Addleman, 151 Wn.2d at 774. And, as the Foster court held, improvement in sentencing is a rational government purpose. 878 F.2d at 1235. Like Foster, McClinton is subject to sanction laws that apply to only offenders who committed their underlying crimes before July 1, 2000, while another class of prisoners is sanctioned under a different system. See id.

The purpose of the OAA was to prevent offenders on postrelease supervision from escaping punishment due to clogged court dockets. Bigsby, 189 Wn.2d at 218. This is a rational government purpose. See Foster, 878 F.2d at 1235. All offenders who committed crimes after July 1, 2000 were subject to these same provisions. All offenders committed crimes prior to July 1, 2000 remained subject to judicial sanctions. Offenders within each class are treated similarly.

Offenders are entitled to be punished based on the crimes and punishments in effect when they committed their crimes. See RCW 9.94A.345. The authority of the trial court to impose sanctions for violation of the terms of sentencing is part of that law. See RCW 9.94B.010(2). Removing that judicial sentencing authority in favor of executive branch sanctioning authority would potentially be a change in the punishment for the crime. This gave the legislature legitimate concern that converting all outstanding postrelease supervision terms into community custody terms might be unconstitutional. Bigsby, 189 Wn.2d at 219. The legislature's concern about the constitutionality of this conversion was a rational basis for keeping the pre-OAA sentencing laws in place for crimes committed before July 1,

2000. Therefore, to achieve the purpose of the statute the legislature had a reasonable ground to create the two classes based on the date the underlying crime was committed. Accordingly, the OAA does not violate equal protection on the basis that it classifies offenders on whether they committed their crime before or after July 1, 2000.

We affirm.

Appelwick, C.J.

WE CONCUR:

Mann, A.C.J.

Dwyer, J.