IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 80315-8-I |
| | ) | |
| DAMION BLEVINS | ) | DIVISION ONE |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| | ) | |

HAZELRIGG, J. — Damion Blevins was found to be a sexually violent predator (SVP) following a jury trial. Blevins had earlier entered a guilty plea to assault in the second degree without a sexual motivation aggravator, so the State sought to prove sexual motivation at the SVP trial. Prior to the SVP trial, Blevins moved to bifurcate the determination of sexual motivation from the remainder of the proceeding, but the motion was denied. Blevins argues on appeal that his due process and equal protection rights were violated and that the court abused its discretion concerning multiple evidentiary rulings. Blevins' challenges are unsuccessful in light of well-settled case law. As such, we affirm.

FACTS

Damion Blevins pleaded guilty in 2017 to assault in the second degree for an attack on A.D. The original charges of robbery and rape were amended down pursuant to the plea agreement and the State did not seek a sexual motivation aggravator. However, the plea statement contained the following facts which

Blevins expressly admitted after colloquy: that he intentionally assaulted A.D. "with intent to commit the felony of rape 2nd degree." In 2018, as Blevins was nearing completion of his prison sentence, the State filed a petition to civilly commit him as a "sexually violent predator" (SVP) under chapter 71.09 RCW. The SVP petition provided notice of the State's intent to prove that the assault in the second degree was sexually motivated, which would render it a sexually violent offense as required by the SVP statute.

Blevins' civil commitment trial occurred in May and June of 2019. The parties engaged in extensive pretrial litigation on several motions, including whether the issue of sexual motivation should be bifurcated from the other portions of the trial. The trial court denied Blevins' motion to bifurcate. The State did not call A.D. at trial and instead sought to prove the sexual assault through various hearsay exceptions and documentary and physical evidence. Additionally, each party presented expert testimony as to Blevins' behavior and potential diagnoses relevant to the SVP proceeding.

The jury returned a unanimous verdict finding Blevins met the statutory criteria to be deemed a sexually violent predator. The verdict included a finding that the assault in the second degree to which he had previously admitted guilt was committed with sexual motivation. The trial court entered an order civilly committing Blevins to the custody of the Department of Social and Health Services "for control, care and treatment" in accordance with the SVP statute. Blevins now appeals.

ANALYSIS

I.    Due Process and Cross-Examination of the Named Victim

A defendant in a criminal proceeding has a right to confront the witnesses at trial. U.S. CONST. amend VI; Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). "It is well settled that civil commitment is a significant deprivation of liberty, and thus individuals facing SVP commitment are entitled to due process of law." In re Det. of Morgan, 180 Wn.2d 312, 320, 330 P.3d 774 (2014). "[A]lthough SVP commitment proceedings include many of the same protections as a criminal trial, SVP commitment proceedings are not criminal proceedings." In re Det. of Stout, 159 Wn.2d 357, 369, 150 P.3d 86 (2007) (emphasis in original). The SVP statute expressly provides for the respondent's right to cross-examine witnesses who testify against them at the probable cause hearing on the initial petition. RCW 71.09.040(3)(c). However, "[i]t is well-settled that the Sixth Amendment right to confrontation is available only to criminal defendants." Stout, 159 Wn.2d at 369. Like Stout, Blevins frames his confrontation challenge as a violation of due process and equal protection. Id.

Blevins argues he was deprived of the right to meaningfully cross-examine A.D. since he resolved his criminal case by entry of a guilty plea and neither party called her as a witness in the SVP commitment trial. In particular, A.D.'s allegations were utilized to prove that the assault in the second degree was sexually motivated, despite the fact that no such aggravator was pleaded or proved in the criminal proceeding. It is well-settled law that the State may establish the sexual motivation of a conviction at the time of the SVP trial. RCW 71.09.020(17);

In re Det. of Mines, 165 Wn. App. 112,120–21, 266 P.3d 242 (2011) (interpreting the plain language of RCW 17.09.020(17) as allowing the State to establish sexual motivation during SVP proceeding).

Blevins relies on Stout for the proposition that he was entitled to a prior opportunity to cross-examine A.D. if her live testimony would not be introduced at the SVP trial. However, Stout is unhelpful for Blevins. Like Blevins, Stout claimed that his due process right to confront and cross-examine a witness against him had been violated when a prior victim's deposition was admitted during the SVP trial. Stout, 159 Wn.2d at 362, 368. Stout had admitted guilt to a burglary charge without a sexual motivation aggravator. Id. at 362. The State later alleged the burglary was sexually motivated and constituted a sexually violent offense for purposes of its SVP petition. Id. The State offered as evidence Stout's guilty plea in which he admitted assaulting the victim. Id. The State also offered the victim's testimony about the incident through two deposition transcripts and a video recording of one of the depositions. Id. The victim refused to return to Washington for the SVP trial and could not be subpoenaed. Id. at 362, 376. The Supreme Court "entertain[ed] Stout's confrontation claim only as it relates to his claimed rights to due process and equal protection." Id. at 369.

The Stout court went on to engage in the test set out in Mathews v. Eldridge to determine whether the minimum requirement of due process had been provided. Id. at 370 (citing Mathews, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

> In determining what procedural due process requires in a given
> context, we employ the Mathews test, which balances: (1) the private

interest affected, (2) the risk of erroneous deprivation of that interest through existing procedures and the probable value, if any, of additional procedural safeguards, and (3) the governmental interest, including costs and administrative burdens of additional procedures.

Id. The first factor was found to weigh in Stout's favor since a respondent to an SVP petition has a significant interest in their physical liberty. Id. The second factor, "the risk of erroneous deprivation of that interest through existing procedures and the probable value, if any, of additional procedural safeguards" was determined to weigh in the State's favor as it has in most other cases. Id. This is due to the comprehensive set of rights that exist for SVP detainees to protect against the risk of an erroneous deprivation of liberty. Id.; see also In re Det. of Coe, 175 Wn.2d 482, 510–11, 286 P.3d 29 (2012); Morgan, 180 Wn.2d at 321–22.

In particular, the Stout court noted "there would be little value in adding a confrontation right to the procedural safeguards available to an SVP detainee." 159 Wn.2d at 371. The court reinforced that the victim's deposition was under oath and that Stout could have reviewed the depositions for inconsistencies and impeached her at any subsequent deposition. Id. The final factor, governmental interest, including costs and administrative burdens of additional procedures, was found, and consistently continues to be found, to weigh in the State's favor. Id.; see also Coe, 175 Wn.2d at 511–12; Morgan, 180 Wn.2d at 322. The Stout court recognized that:

> If an SVP commitment takes place several years after the predicate convictions and if a determination of sexual motivation was not made at the time of sentencing, it is unduly burdensome to require the State to build its case around a right to confrontation that adds only marginal protection for an SVP against liberty deprivation.

159 Wn.2d at 372. Because confrontation would only add marginal protection in an SVP trial, our supreme court has expressly declined to include that right in the list of those already held by the respondent in this context.

Here, Blevins argues that while he,

adopted a factual statement in his plea form that stated that he committed the assault with intent to commit rape in the second degree,[] he in no way admitted to the sexual assault allegation that was present at trial[,] which formed the basis of the experts' opinions.

However, in Abolafya v. State, this division squarely rejected the assertion that a violation of the plea agreement occurs when a defendant pleads to a lesser crime without a sexual motivator and the plea is later utilized to prove the crime was sexually motivated in a civil SVP proceeding.[1]  114 Wn. App. 137, 147, 56 P.3d 608 (2002).

Further, Coe addressed the question of whether an expert could rely on thirty-six unadjudicated offenses that included rape and indecent exposure incidents in forming their opinion that Coe met the statutory definition of a sexually violent predator. 175 Wn.2d at 509–13. Our state's supreme court held an expert's reliance on reports of five assaults in which the victims were unavailable to testify did not violate due process. Id.  The court reiterated, "that a defendant in an SVP proceeding has no right to confront witnesses, either in trial or in deposition." Id. at 509 (citing Stout, 159 Wn.2d at 368–74).  The Coe court went through the Mathews factors in a matter nearly identical to the court in Stout. Id. at 510–12.

---

[1] While this is not precisely Blevins' argument, it is clear that the use of his plea agreement to prove sexual motivation at the SVP trial was not improper.

- 6 -

But in Coe, the Supreme Court went even further as to the second factor. It determined that, despite an absence of facts like those in Stout where the jury was able to assess the victim's testimony through depositions, Coe had been provided significant safeguards such that there was little concern that jurors could not evaluate the accusers upon which the expert had relied in forming their opinion. Id. at 510. The court reinforced that Coe received the same statutory safeguards as those in Stout, such as right to counsel, a jury trial, and a unanimous verdict with the State carrying the burden of proof beyond a reasonable doubt. Id. at 511.

Here, Blevins' claim is unsuccessful as nothing in the facts of this case suggest that the Mathews factors do not weigh out as they have in previous SVP due process challenges in our state. See Stout, 159 Wn.2d at 370–74; Coe, 175 Wn.2d at 509-12; Morgan, 180 Wn.2d at 320–23. The first factor, the private interest affected, clearly weighs in Blevins' favor, as it would in all SVP proceedings since something in which he has a strong interest, his physical liberty, is at stake.

The most contentious is the second factor; the risk of erroneous deprivation of that interest through existing procedures and the probable value, if any, of additional procedural safeguards. Blevins argues that this factor weighs in his favor and the situation is distinct from the respondents in Coe and Stout since depositions were taken in Stout and, in Coe, the unadjudicated allegations were only utilized in the formation of the expert's opinion. While this may be factually correct, as to the analysis relied upon in each case, the statutory safeguards for Blevins were identical, particularly as to the analysis and holding in Coe. Blevins was represented by counsel, had a jury trial which required a unanimous verdict,

and the State carried the burden of proving the allegations in its petition beyond a reasonable doubt. Importantly, at oral argument before this court, Blevins admitted to not having attempted to depose A.D. As in Coe, the second factor weighs in the State's favor because of the statutory safeguards present in Blevins's SVP trial.

The third factor, the governmental interest, including costs and administrative burdens of additional procedures, should be weighed the same as in the prior cases. The State has a significant interest in preventing individuals from committing further sex offenses. See Stout, 159 Wn.2d at 371; Coe, 175 Wn.2d at 511–12. The State has an interest in streamlining procedures to avoid the financial burden of live testimony and such a burden would be difficult to justify given the marginal protection confrontation would provide to the respondent's liberty interest. Therefore, the factor weighs in the State's favor, as does the overall balancing of the Mathews factors.

Ultimately, Blevins fails to establish why we should depart from the well-settled law as to what due process is owed to a respondent in an SVP proceeding. Both this court and the Supreme Court have repeatedly indicated that the procedural safeguards provided by statute are sufficient. We find no violation of Blevins' due process rights.

II.     Equal Protection Challenge to SVP Trial

Blevins argues that allowing the State to prove sexual motivation in the civil, rather than the criminal, proceeding violates his right to equal protection. "The Washington Constitution article I, section 12, and the Fourteenth Amendment to the United States Constitution ensure that persons similarly situated as to the

legitimate purposes of a law receive equal treatment." State v. McClinton, 10 Wn. App. 2d 236, 242, 448 P.3d 101 (2019). We construe both our state and the federal equal protection clause identically. Id. In the context of reviewing involuntary commitment statutes we utilize a rational basis standard. Abolafya, 114 Wn. App. at 146. "Rational basis applies when a statutory classification does not involve a suspect or semisuspect class." McClinton, 10 Wn. App. 2d at 243. It is the party making the challenge that has the burden to establish that the classification is purely arbitrary. Id. "Under rational basis review, the challenged law must reflect a legitimate state objective, and the law must not be wholly irrelevant to achieving that objective." Id.

This court's analysis in Abolafya is directly on point in addressing this challenge by Blevins and clearly indicates that no such violation occurs when the State seeks to establish sexual motivation in the SVP proceeding. Blevins' claim is nearly identical to Abolafya's, which was:

> that by allowing sexual motivation to be proved at the civil commitment proceeding two classes of people are created with no legitimate purpose for treating them differently. The first class consists of respondents who received the full procedural protections of a criminal trial on the predicate offense and special allegation of sexual motivation. The second class consists of respondents who are forced to defend against a special allegation of sexual motivation at a civil trial during which they have no right to remain silent and during which there will be presentation of evidence that would have been inadmissible at the criminal trial.

114 Wn. App. at 145. Blevins makes essentially the same facial challenge to RCW 71.09.020 as Abolafya, which was rejected by this division. In Abolafya, we explained that this sort of challenge does not even establish two similarly situated classes of individuals.

> Abolafya argues that he is similarly situated to people who have already faced criminal sanctions for a special allegation of sexual motivation and who are now facing civil commitment as a result of that criminal conviction. This is incorrect. Abolafya is now facing only civil commitment, not criminal sanctions. Criminal defendants face increased prison sentences or periods of probation for findings of sexual motivation. Constitutionally they are afforded greater protections than civil respondents. Abolafya is not similarly situated to criminal defendants facing an allegation of sexual motivation.

Id. at 146. This opinion has not been called into doubt by subsequent case law in its nearly twenty years of existence. We are disinclined to accept Blevins' invitation to depart from the analysis in Abolafya. As such, Blevins has failed to establish the first step of an equal protection challenge: demonstrating differing treatment between similarly situated classes.

III.    Evidentiary Rulings

Finally, Blevins challenges three specific evidentiary rulings by the trial court. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. In re Det. of West, 171 Wn.2d 383, 396, 256 P.3d 302 (2011). A trial court abuses its discretion when its decision is based on untenable grounds or is manifestly unreasonable. Id. at 397.

A. Evidence of Poverty and Lack of Resources

Though Blevins attempts to frame this as a due process violation, the assignment of error is more properly understood as a challenge to an evidentiary ruling which does not rise to the level of substantive due process. Blevins asserts the court erred in ruling that his lack of community support could be discussed; particularly its conclusion that it was relevant to the jury's determination of his risk

to reoffend if not confined to a secure facility. See RCW 71.09.060(1). The trial court weighed the proffered evidence and concluded admission was proper. In addition, the record suggests that it was Blevins who extensively discussed his poverty and tumultuous background at trial.

During the pretrial hearing on motions in limine, Blevins argued that any information about his release plan was not relevant to the commitment proceeding. However, the trial court pointed out that it went to the jury's assessment of whether he was likely to reoffend if not confined in a secure facility, which is a necessary element to be determined by the jury. RCW 71.09.060(1). The court did agree with Blevins that the proper test was one of general admissibility; to weigh the probative value against the potential prejudice that might come from the evidence. See ER 402, 403. The trial court relied on In re Detention of West in making its determination that the evidence was generally proper and then specifically considered whether information related to Blevins' release plan had a probative value which outweighed any prejudicial effect. 171 Wn.2d 383.

The State correctly points out that the only testimony elicited about Blevins' poverty was by his own counsel when questioning the State's expert, Dr. Harry Goldberg, about whether his assessment would have changed if Blevins' family was wealthy. One example of a question posed by Blevins' counsel was:

> Q: For somebody who has been raised like, you know, Damion Blevins, from a single mother, in a poverty, joins gangs, I mean, it would be a miracle for that person not to be diagnosed with ASPD[2]; correct?

---

[2] Antisocial personality disorder.

This question followed Blevins' earlier focus in cross-examination on his upbringing by a "single mother," in "poverty," and "involved [with] gangs." The State did briefly explore how Blevins' inability to maintain employment impacted Goldberg's risk assessment, however questioning was not particularly focused on Blevins' upbringing or lack of resources. Blevins emphasized those issues and framed questions in terms of his resources and background, which appears to have been part of his trial strategy. The trial court did not abuse its discretion in allowing evidence of Blevins' lack of community support.

### B. Evidence of Potential Future Proceedings

Blevins next argues that the trial court erroneously deprived him of the opportunity to demonstrate that he could be subject to involuntary commitment in the future based on commission of a recent overt act. The posture by which Blevins presents this issue is directly addressed by In re Detention of Post. 170 Wn.2d 302, 316–17, 241 P.3d 1234 (2010). The Post court determined evidence that a respondent could be subject to further SVP proceedings if they committed a recent overt act might be properly admitted if the evidence was indicative that the respondent understood that they were so subject and that understanding had "some tendency to diminish the likelihood of his committing another predatory act of sexual violence." Id. Here, the trial court determined such evidence was not relevant because Blevins did not admit to having any issues or urges that needed to be addressed and further denied that any of the sexual assault allegations had merit. The trial court interpreted this information to mean that potential future filings would not act as a deterrent for Blevins.

On appeal, Blevins frames the issue by asserting that the court should not have relied upon his statements because he was not an accurate self-reporter. This argument is not well taken, nor does it appear that it was presented to the trial court. The trial court properly weighed the evidence. It determined that since Blevins did not appear to be concerned with such consequences, and went so far as saying that his risk of "future violent hands-on sexual offenses against a woman" is zero, evidence of the potential for future filings by the State based on a recent overt act was properly excluded. This ruling by the trial court does not constitute an abuse of discretion.

C. Presumption of Non-commitment

Blevins' final challenge assigns error to the trial court's refusal to allow him to argue in closing that he was presumed not to be a sexually violent predator. Blevins attempts to distinguish his circumstances from current case law, arguing the prior cases have addressed a respondent's request for a jury instruction on a presumption of non-commitment, as opposed to merely allowing such argument in closing. It is difficult to reconcile this distinction with the case law in our state. Division Three of this court put it quite bluntly in In re Detention of Twining: "The short answer is that this is not a criminal case, and criminal constitutional protections are not applicable beyond those supplied in the statute and those granted in [In re Detention of Young, 112 Wn.2d 1, 857 P.2d 989 (1993)]." 77 Wn. App. 882, 895, 894 P.2d 1331 (1995), overruled on other grounds, In re Det. Of Pouncy, 168 Wn.2d 382, 229 P.3d 678 (2010) (citing Young, 112 Wn.2d at 47–51). Though these cases have been overturned or superseded on other grounds,

In re Detention of Law reinforced that Young and Twining are still good law as far as the proposition that neither the presumption of innocence, nor a presumption of non-commitment, apply to an SVP proceeding. 146 Wn. App. 28, 48–49, 204 P.3d 230 (2008).

Again, Blevins initially frames this challenge as a due process violation in briefing, but later characterizes the denial of his request as an abuse of discretion by the trial court. Though Blevins focuses on the ability to argue presumption of non-commitment to the jury in closing and attempts to distinguish the precedent as focused on jury instructions, this is a ruling on a motion in limine which is reviewed under an abuse of discretion standard. In light of the controlling case law, the trial court did not abuse its discretion.

Affirmed.

_____

WE CONCUR:

_____    _____
Duyn, J.                    Appelwick, J.

- 14 -